IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RABBI PHILIP LEFKOWITZ et al.,

Plaintiffs,

v.

WESTLAKE MASTER
ASSOCIATION, INC. et al.,

Defendants.

CIVIL ACTION NO.
3:18-cv-14862 (AET) (TJB)

**ORAL ARGUMENT REQUESTED**

---

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS'
PARTIAL MOTION TO DISMISS COUNTS I, II, III, V AND VI
OF THE COMPLAINT**

---

**BEVELOCK & FISHER LLC**
14 Main Street, Suite 200
Madison, New Jersey 07940
Tel:  (973) 845-2999
Fax:  (973) 845-2797

*Attorneys for Plaintiffs,*
*Rabbi Philip Lefkowitz, Levi Lefkowitz, and*
*Moshe Lefkowitz*

Of Counsel and on the Brief:
  Gregory J. Bevelock, Esq.

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................... 4

   A. The Lefkowitzes' Jewish Faith, Handicaps and Move to Westlake .............. 5

   B. Rabbi Lefkowitz's Requests Regarding the Sukkah and
      Defendants' Denial of those Requests ............................................................ 6

   C. Rabbi Lefkowitz's Requests Regarding the Gate and
      Defendants' Denial of Those Requests ........................................................ 10

STANDARD OF REVIEW ................................................................................. 14

ARGUMENT ...................................................................................................... 15

  I. Plaintiffs Have Stated Claims under 42 U.S.C. § 3604 for Both
     a Reasonable Accommodation and a Reasonable Modification
     Relating to the Gate – Count I ...................................................................... 15

     A. The Lefkowitzes Have Stated a Reasonable Accommodation
        Claim Regarding the Gate ........................................................................ 18

     B. The Lefkowitzes Have Stated a Reasonable Modification
        Claim Regarding the Gate ........................................................................ 21

     C. The Gate and Access Way to Gale Chambers Road are
        Existing Premises ..................................................................................... 24

  II. Plaintiffs Have Stated a Claim under 42 U.S.C. § 3617 for Interference
     with Plaintiffs' Rights Protected by the FHA – Count II ............................ 27

  III. Plaintiffs Have Stated a Claim for Violations of the New Jersey
      Law Against Discrimination – Count III ..................................................... 34

i

IV.    Plaintiffs Have Stated a Claim for Violation of the Planned Real
       Estate Development Full Disclosure Act ("PREDFDA") – Count V ........ 35

V.     Plaintiffs Have Stated a Claim for Aiding and Abetting against
       the Individual Board Members – Count VI ................................................ 36

CONCLUSION ...................................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Andujar v. Hewitt,*
2002 WL 1792065 (S.D.N.Y. Aug. 2, 2002) ......................................... 37 n.9

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................. 14, 15

*Astralis Condo. Ass'n v. Secretary, H.U.D.,*
620 F.3d 62 (1st Cir. 2010)......................................................19

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...............................................................14

*Berardelli v. Allied Srvs. Inst. of Rehab. Med.,*
900 F.3d 104 (3d Cir. 2018) ...................................................16 n.2

*Bloch v. Frischholz,*
587 F.3d 771 (7th Cir. 2009) ....................................................33

*Brooks v. Seattle Housing Auth.,*
2015 WL 3796232 (W.D. Wash. June 18, 2015) .................................. 21, 22

*Buck v. Hampton Twp. Sch. Dist.,*
452 F.3d 256 (3d Cir. 2006) ................................................... 39 n.10

*DuBois v. Ass'n of Apart. Owners of 2987 Kalakau,*
453 F.3d 1175 (9th Cir. 2005), *cert. denied* 549 U.S. 1216 (2007) ..............17

*Evans v. Forkids, Inc.,*
306 F. Supp. 3d 827 (E.D. Va. 2018).................................................. 22, 23

*Fagundes v. Charter Builders Inc.,*
2008 WL 268977 (N.D. Cal. Jan. 29, 2008)..................................................20

*Falin v. Condo. Ass'n of La Mer Estates, Inc.*,
   2011 WL 5508654 (Nov. 9, 2011) ......................................................... 37 n.9

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ...........................................................15

*Hollis v. Chestnut Bend Homeowners Ass'n*,
   760 F.3d 531 (6th Cir. 2014) ................................................... 16, 21

*Hovsons, Inc. v. Twp. of Brick*,
   89 F.3d 1096 (3d Cir. 1996) ...........................................................15

*Malleus v. George*,
   641 F.3d 560 (3d Cir. 2011) ...........................................................14

*Michigan Prot. & Advocacy Serv., Inc. v. Babin*,
   799 F. Supp. 695 (E.D. Mich. 1992), *aff'd* 18 F.3d 337 (6th Cir. 1994)  28, 29

*Moates v. Plantation Oaks Homeowners Ass'n*,
   2013 WL 5532626 (M.D. Ala. Oct. 7, 2013) ......................................... 18, 19

*Overlook Mut. Homes, Inc. v. Spencer*,
   415 Fed. Appx. 617 (6th Cir. 2011) ................................................16

*Revcock v. Cowpet Bay West Condo. Ass'n*,
   853 F.3d 96 (3d Cir. 2017) .................................................... *passim*

*Reyes v. Fairfield Properties*,
   661 F. Supp. 2d 249 (E.D.N.Y. 2009) ..............................................20

*Rodriguez v. 551 W. 157th St. Owner's Corp.*,
   992 F. Supp. 385 (S.D.N.Y. 1998) .................................................20

*Tarr v. Ciasulli*,
   181 N.J. 70 (2004) .................................................................. 36, 39

*Texas Dep't of Hous. & Cmty. Affairs v. Incl. Com. Project, Inc.*,
   135 S.Ct. 2507 (2015) ................................................................15

*United States v. Piekarsky*,
    687 F.3d 134 (3d Cir.), *cert. denied* 568 U.S. 889 (2012) ...........................29

*Walker v. City of Lakewood*,
    272 F.3d 1114 (9th Cir. 2001), *cert. denied* 535 U.S. 1017 (2002)..............29

*Weiss v. 2100 Condo. Ass'n*,
    941 F. Supp. 2d 1337 (S.D. Fla. 2013)........................... 20, 21, 22, 24 n.5, 26

## Statutes, Rules & Other Authorities

42 U.S.C. § 3604 ................................................................... 15, 16, 18, 21, 33

42 U.S.C. § 3617 ........................................................... 3, 27, 28, 30, 33

24 C.F.R. § 100.201 .............................................................. 25, 26, 27

24 C.F.R. § 100.400 ................................................................................33

Fed.R.Civ.P. 8 .......................................................................................14

N.J.S.A. 10:5-4 ......................................................................................34

N.J.S.A. 10:5-12 ............................................................................. 34, 36

N.J.S.A. 45:22A-44 ............................................................................. 35

N.J.A.C. 13:13-3.4 ................................................................................34

*Joint Statement of the Dept. of Housing and Urban Dev. and the*
*Dept. of Justice: Reasonable Modifications Under the Fair Housing*
*Act* (March 5, 2008) ...................................................... 18 n.3, 23 n.4, 25

*Joint Statement of the Dept. of Housing and Urban Dev. and the*
*Dept. of Justice: Reasonable Accommodations under the Fair Housing*
*Act* (May 17, 2004) ......................................................................... 23 n.4

**PRELIMINARY STATEMENT**

This action arises out of a refusal by defendants, Westlake Master Association, Inc. (the "HOA"), and its board members, Bobbie Rivere, Dennis Lafer, Richard E. Fontana, Maria Miller, James P. Garrett, David Whelan, Michael W. Yudin, Diane E. O'Connor, and Peter J. Marinasco (collectively, the "Board Members") (the HOA and Board Members are referred to as "Defendants"), to comply with, among other law, the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), and the New Jersey Law Against Discrimination, N.J.S.A.10:5-1 *et seq.* ("NJLAD"). Defendants are obligated by law to provide reasonable accommodations and permit reasonable modifications due to the Lefkowitzes' physical handicaps and are barred from discriminating against them based on their handicaps or religion.

Plaintiffs, Rabbi Philip Lefkowitz and his two sons Levi and Moshe (collectively, "Plaintiffs" or the "Lefkowitzes"), are Orthodox Jews. All three of the Lefkowitzes suffer from diabetes and have lost limbs. Due to these handicaps, Rabbi Lefkowitz repeatedly asked Defendants (a) for permission to construct a permanent screened porch that could also be used as a permanent sukkah because, among other things, the temporary sukkah permitted by the HOA's rules is far too small to accommodate the Lefkowitzes' wheelchairs; and (b) to open an existing access way and gate to the adjacent neighborhood where Rabbi Lefkowitz's daughter lives and

install a path over which the Lefkowitzes could travel in their wheelchairs. Defendants, however, have repeatedly denied these requests by Rabbi Lefkowitz.

Defendants' motion challenges only those portions of Counts I, II, III, V and VI of the Complaint that relate to Rabbi Lefkowitz's requests regarding the gate. As to Lefkowitzes' claims for a reasonable accommodation and modification under the FHA (Count I), Defendants' primary argument is that this claim should be dismissed because the claim is not a request for an accommodation at all but is solely a request for a modification for which Rabbi Lefkowitz did not offer to pay. Defendants also argue that the gate and access way purportedly do not exist. Count I, however, is a claim for both an accommodation and a modification. There is an existing gate and access way that Defendants claim is limited to construction and emergency vehicles. The Lefkowitzes seek an accommodation from that rule, policy or practice to allow them to use the gate. They also seek a modification to the vacant lot leading to the gate in the form of a path they can traverse in their wheelchairs. Offering to pay for a modification is not a pleading requirement for this claim and would make no sense here, where Defendants repeatedly rejected the request on other grounds without ever raising the issue of who would pay. In any event, contrary to the cases on which Defendants rely, Rabbi Lefkowitz is willing to pay for a modification to the extent required by the FHA.

As to Plaintiffs' claim for interference with their housing rights in violation of Section 3617 of the FHA (Count II), Defendants rely on the wrong law. Their argument is based on a 1992 district court case from Michigan that rejected the plain meaning of interference and gave it a "more direct, restricted" meaning, "namely, the use or threat of force, coercion, or duress to hinder valid housing rights." Defendants fail to cite controlling, 2017 precedent from the Third Circuit that holds that the word "interference" in Section 3617 "must be understood by its ordinary meaning" and "does not require force or threat of force." Under the correct legal standard, the Complaint plainly states a claim for a violation of Section 3617.

Defendants' arguments to dismiss the claims under the NJLAD (Count III) the New Jersey Planned Real Estate Development Full Disclosure Act ("PREDFDA"), N.J.S.A. 45:22A-21 *et seq.* (Count V), and for aiding and abetting (Count VI), are all based on the assertion that the Complaint fails to state claims for violations of the FHA. Because the Complaint states claims for violations of the FHA, Defendants' motion to dismiss these other claims also should be denied.[1]

---

[1] In their brief, Defendants state that "the issue concerning the Succah has been resolved in principle" (Defendants' Brief ["Db"] at 3 n.1) and make reference to a purported amicable resolution of "the Succah issue" (Db2). These statements are not true. There is no resolution in principle or amicable resolution regarding the sukkah. Rabbi Lefkowitz has filed an application for a permanent screened porch that can be used as a sukkah (*see* Compl. ¶¶ 2, 52, 60, 79, 111), which is still pending before Defendants. Defendants have not committed to approving that application, and thus, there is no resolution in principle or otherwise. If Defendants approve a permanent screened porch that can be used as a sukkah, then obviously that aspect

For these reasons, we respectfully submit that the Court should deny Defendants' partial motion to dismiss.  If the Court is inclined to grant any part of the motion, Plaintiffs request leave to supplement their Complaint to address any error in their original pleading.  That would be the appropriate remedy, not a dismissal with prejudice as requested in Defendants' proposed form of Order.

### STATEMENT OF FACTS

Plaintiffs' 23-page, 138 paragraph complaint pleads in great detail numerous facts that, if taken as true as they must on this motion, demonstrate that Defendants have engaged in an almost two-year campaign of discrimination against Rabbi Lefkowitz and his sons by alternately ignoring, dismissing and denying Rabbi Lefkowitz's numerous requests for accommodations as to both the sukkah and the gate.  Defendants imply in their brief that their misconduct in connection with Rabbi Lefkowitz's requests regarding the sukkah are not relevant to this motion.  Those

---

of Plaintiffs' claim for relief will be resolved.  However, whether or not the application is approved, Plaintiffs' claims for damages and attorney's fees regarding the sukkah will remain and will have to be litigated.  Defendants' post-litigation approval of a temporary sukkah, which Defendants reference in their brief (Db1), does not resolve the accommodation/modification claim because that is not the full accommodation/modification that Rabbi Lefkowitz seeks or to which he is entitled.  Defendants' post-litigation approval, however, is a clear admission by Defendants that their pre-litigation denials of Rabbi Lefkowitz's requests regarding the sukkah violated the FHA and NJLAD and entitle Plaintiffs to damages and their attorney's fees.  On December 21, 2018, we sent Defendants a letter objecting to their erroneous statements to the Court.  We have not provided the Court with a copy of the letter because these issues are irrelevant to the pending motion.  If the Court desires to see the letter, we will be happy to submit it.

acts, however, provide the context in which Defendants denied Rabbi Lefkowitz's request regarding the gate and inform the Court's decision as to whether Plaintiffs have pled a plausible claim for relief as to the gate.

**A.    The Lefkowitzes' Jewish Faith, Handicaps and Move to Westlake.**

Rabbi Lefkowitz and his two sons, Levi and Moshe, are Orthodox Jews, and faithfully observe the obligations of their faith to the best of their abilities.  Compl. ¶ 28.  All three of the Lefkowitzes suffer from diabetes, have lost portions of their legs, and use wheelchairs to transport themselves.  *Id.* ¶¶ 29-30.

Prior to moving to New Jersey in July 2016, Rabbi Lefkowitz and his sons lived in Chicago for nearly 30 years, where Rabbi Lefkowitz served the Agudas Achim North Shore Congregation, one of Chicago's oldest and most significant synagogues.  *Id.* ¶¶ 24, 26.  After retiring from the rabbinate, Rabbi Lefkowitz and his sons moved to Jackson, New Jersey to be close to his daughter, her husband and their then-six, now-seven children.  *Id.* ¶ 31.

Rabbi Lefkowitz purchased 27 Crooked Stick Road, which is in the Westlake Golf and Country Club ("Westlake"), a community restricted to individuals age 55 and over.  *Id.* ¶ 8.  The HOA defendant is a New Jersey corporation established to administer and maintain the common property and facilities of Westlake.  *Id.* ¶ 9. The individual defendants are members of the Board of Trustees of the HOA, and

are responsible for managing the property, affairs and business of the HOA. *Id.* ¶ 19.

The Lefkowitzes moved to their home in Westlake because their house is located a few blocks from the Rabbi's daughter's home on Gale Chambers Road, although his daughter's home is not part of Westlake. *Id.* ¶¶ 31-32. The Lefkowitzes are the first and only Orthodox Jewish family living in Westlake. *Id.* ¶ 33. However, Orthodox families are moving into homes on Gale Chambers Road. *Id.* ¶ 34.

**B.      Rabbi Lefkowitz's Requests Regarding the Sukkah and Defendants' Denial of those Requests.**

The construction of a sukkah is a religious commandment found in the Hebrew Scriptures. Compl. ¶ 35. Sukkah is a Hebrew word meaning "booth" and Sukkot is the name of the annual festival Jews are required to celebrate. *Id.* ¶¶ 36-37. Orthodox Jews are required to erect a sukkah during the seven-day festival of Sukkot for eating, entertaining and even for sleeping. *Id.* ¶ 38. The HOA's rules allow for the construction of temporary sukkah, but only pursuant to strict criteria which include that the structure be no larger than 8 feet wide, 10 feet long and 8 feet high. *Id.* ¶ 44. That size sukkah is too small for the Lefkowitzes given their need to use wheelchairs. *Id.* ¶ 47. Rabbi Lefkowitz has repeatedly asked Defendants to accommodate his and his sons' handicaps so that they could practice their religion. Defendants, however, have consistently denied those requests.

6

First, in October 2016, unaware of Defendants' rules, the Lefkowitzes started constructing their sukkah, when Defendants' property manager advised Rabbi Lefkowitz of the rules. *Id.* ¶¶ 41-42. Rabbi Lefkowitz immediately complied, but Defendants' property manager rejected the plans because the proposed sukkah was larger than the rules permitted due to the Lefkowitzes use of wheelchairs, even though Defendants' knew the Lefkowitzes' were amputees. *Id.* ¶¶ 46-49.

Next, in the spring of 2017, Rabbi Lefkowitz wrote to Defendants and stated that, given his and his sons' handicaps, they should be permitted to construct a screened porch on his existing patio that would also serve as a permanent sukkah. *Id.* ¶ 52. Rabbi Lefkowitz stated that the structure would be "unobtrusive" and would "blend perfectly with the house and would not be visible to anyone except perhaps one neighbor, if they peered over their six-foot hedges." *Id.*

In a letter dated April 17, 2017, defendant Bobbie Rivere, the Board's President, responded to Rabbi Lefkowitz's letter, stating that "[o]ne resident's view of 'obtrusive' may not comport with that of another resident. Some individuals may object to the presence of Sukkahs and others may be unhappy with Christmas decorations. In common interest communities, those interests need to be reconciled to the extent possible." *Id.* ¶ 55. Ms. Rivere also falsely stated that "permanent structures are not permitted." *Id.* ¶¶ 55-56. Permanent screened porches are expressly permitted by the HOA's rules. *Id.* ¶ 57.

Rabbi Lefkowitz responded on May 2, 2017.   In his response, Rabbi Lefkowitz noted that Ms. Rivere failed to address his request for an accommodation to build a screened porch that could also be used as sukkah.   *Id.* ¶ 60.   Rabbi Lefkowitz also stated that Ms. Rivere's apparent belief that some resident's objections to the mere presence of a sukkah must be taken into consideration when formulating the HOA's rules is nothing more than religious bigotry.   *Id.* ¶ 61.

Ms. Rivere did not respond to Rabbi Lefkowitz's May 2, 2017 letter until September 19, 2017.   *Id.* ¶ 62.   In her letter, Ms. Rivere rejected Rabbi Lefkowitz's request to build a permanent screened porch that could be used a sukkah, stating that while there are screened porches in the community, "the model of your home does not qualify" and that "the Board's position remains unchanged."   *Id.* ¶ 63.

Ms. Rivere's statement that Rabbi Lefkowitz's model home does not qualify for a screened porch is false.   *Id.* ¶ 68.   The rules she cites permit a screened porch on Rabbi Lefkowitz's model home.   *See id.* ¶¶ 65-68.   On September 27, 2017, Rabbi Lefkowitz again wrote to the Board and again pleaded with the Board to accommodate the Lefkowitzes' handicaps so that they can practice their religion. After stating that he and his sons are unable to utilize the temporary sukkah permitted by the Association's rules because of their handicaps, Rabbi Lefkowitz wrote:

> I expect the common decency of allowing me to practice my religion recognizing that we are a physically challenged family.  I don't believe this is too much to ask from my neighbors especially as I am observing my faith in a modest manner on my own property.  *Id.* ¶ 69.

Defendants did not respond to Rabbi Lefkowitz's email. *Id.* ¶ 70.

Thereafter, Rabbis serving Reform, Conservative and Traditional congregations sent a joint letter to the Board, pleading with them to grant Rabbi Lefkowitz an accommodation so that he and his sons can construct a sukkah that they can actually use to practice their faith. *Id.* ¶ 71. The Rabbis wrote in part:

> We understand that, as a result of the rabbi's and his sons' physical challenges, they cannot build a sukkah on their rear patio in accord with the exact rules spelled out in your by-laws…
>
> In spite of repeated requests and suggestions made by Rabbi Lefkowitz, you have responded with the "letter of the law" and nothing more…
>
> We fail to understand why a 55+ community cannot demonstrate the compassion and understanding necessary to accommodate the needs of the disabled…. *Id.*

Defendants did not respond to the Rabbis' letter either. *Id.* ¶ 72.

Not having heard anything from Defendants, on March 15, 2018, Rabbi Lefkowitz again wrote to the Board and again requested that the Board to allow him to build a permanent screened porch that can be used as a sukkah. *Id.* ¶¶ 73, 75. Eighteen months after Defendants first became aware the temporary sukkah permitted by their rules cannot be used by the Lefkowitzes because of their handicaps and after numerous requests for an accommodation by Rabbi Lefkowitz, Defendants acknowledged for the first time Rabbi Lefkowitz's request for a handicap accommodation. *See id.* ¶ 76. However, rather than granting the

9

accommodation, the Board requested that Rabbi Lefkowitz apply for one and provided him with a form entitled "Request for Reasonable Accommodation." *Id.*

On September 17, 2018, Rabbi Lefkowitz submitted an application for a screened porch that could also be used as a permanent sukkah, which remains pending. *Id.* ¶ 79. The permanent screened porch that can be used as a sukkah requested by Rabbi Lefkowitz is permitted by the HOA's rules and regulations, or in the alternative, Rabbi Lefkowitz is entitled to construct the screened porch that can be used as a sukkah as an accommodation under the FHA. *Id.* ¶¶ 80-81.

**C.    Rabbi Lefkowitz's Requests Regarding the Gate and Defendants' Denial of Those Requests.**

Defendants' (a) denial of Rabbi Lefkowitz's requests regarding the sukkah, (b) false statements to Rabbi Lefkowitz that "permanent structures" are not permitted and that a screened porch is "not available" on his model home, and (c) pattern of conduct to frustrate, impede and deny his requests regarding the sukkah is the factual context in which Defendants denied Rabbi Lefkowitz's requests regarding the gate and is relevant to evaluating Defendants' motion.

In his March 15, 2018 letter to the Board, Rabbi Lefkowitz also requested that the existing gate in the fence that separates Westlake's property from Gale Chambers Road be unlocked and that a path be installed so that the Lefkowitzes could use the gate. *Id.* ¶ 82. Rabbi Lefkowitz explained that his Jewish faith does not permit him or his children to use automobiles on the Sabbath or on Holy Days. *Id.* ¶ 83. His

10

daughter lives just on the other side of the gate, and a weekly prayer meeting is held every Sabbath in a home also located just on the other side of the gate. *Id.* Since the gate is locked, he and his sons are forced to travel in their wheelchairs approximately 1.1 miles to his daughter's house and approximately 1.4 miles to the house where the prayer meeting is held. *Id.* ¶ 84. Moreover, they must do so over dangerous and difficult roads that contain heavy, fast moving traffic and without sidewalks for long stretches. *See id.* ¶¶ 84-86.

Because of the danger, Rabbi Lefkowitz has ceased attending the prayer service. *Id.* ¶ 87. As summed up by Rabbi Lefkowitz in his letter to the Board:

> My daughter, son-in-law and six [now seven] grandsons live just outside the gate on Gale Chambers Road. I am retired. Faith and family are key to a senior's wellbeing and happiness. I am deprived of both in large measure because I cannot access this gate. *Id.*

Rabbi Lefkowitz thus asked the Board to open the already existing gate and to install a path suitable for wheelchairs. *Id.* ¶ 88. With use of the gate, Rabbi Lefkowitz would be only approximately .3 miles from his daughter's house and the prayer service, which would take less than 10 minutes to travel. *Id.* ¶ 89. Rabbi Lefkowitz also would be able to avoid the dangerous traffic and would be able to enjoy his family and practice his faith. *Id.*

Not surprisingly, Defendants denied Rabbi Lefkowitz's request. *Id.* ¶ 90. Defendants' proffered several reasons for the denial, which constantly shifted over the summer. Significantly, Defendants' many, constantly changing reasons for

denying the request ***did not*** include the issue of who would pay for the gate and path. First, in a May 8, 2018 letter from Ms. Rivere, Defendants simply claimed that the "gate in question was never intended to be a regular access point in this gated community" and that in "the Board's opinion it [is] not in the best interests of the community as a whole, and the residents whose homes are adjacent to this access gate, to create a public pedestrian entrance to the community behind that area." *Id.* ¶ 90. Defendants did not acknowledge their obligations under the FHA or the NJLAD. *Id.*

After Rabbi Lefkowitz informed Defendants of their obligations under the FHA and NJLAD, Defendants offered a different reason for denying the request. *Id.* ¶¶ 91-92. This time Defendants asserted that the site plan for the community indicates that (a) the gate is an access point for construction and other emergency vehicles, (b) that the area between the gate and Crooked Stick Road contains an easement for emergency vehicles, and (c) that the location was not "intended" for "regular vehicular traffic or pedestrian traffic." *Id.* ¶ 92.

None of these asserted reasons provide a legitimate basis for denying Rabbi Lefkowitz's request, and he so informed Defendants. *Id.* ¶ 93. In particular, the gate need not be opened to the public or to members of the HOA generally. Defendants only need to provide Rabbi Lefkowitz with a Sabbath-usable key or access and a suitable path for him and his sons to traverse in their wheelchairs. *Id.* ¶¶ 94-96. The

assertion that the gate is intended only for use as an access point for emergency and construction vehicles is belied by the actual nature of the gate, which is very narrow gate that does not appear wide enough to accommodate emergency or construction vehicles. *Id.* ¶ 97. There is no apparent reason why an emergency or construction vehicle would need to use this locked gate rather than coming through other gates into Westlake, and the use of the gate by Lefkowitzes would not interfere with the use of the gate by emergency vehicles. *Id.* ¶¶ 98-99.

In the letter, Rabbi Lefkowitz also noted that he and his sons need a suitable path for their wheelchairs from the sidewalk on Crooked Stick Road through the gate. That location currently is a grass covered lot. *Id.* ¶ 100. In an attempt to persuade Defendants to grant the request, Rabbi Lefkowitz proposed that the path could be constructed using a grass walkway system that are available that could support wheelchairs while allowing grass to grow over the path so that the location would continue to look simply like a grass covered lot. *Id.* Defendants persisted, however, in their denial of the request, this time simply stating that they were "thus far not persuaded that this particular form of accommodation is required by the federal Fair Housing Act." *Id.* ¶ 102.

On September 20, 2018, Rabbi Lefkowitz and his son Levi met with members of the Board and counsel to discuss this issue. *Id.* ¶ 103. At that meeting, Defendants proffered yet another purported justification for their denial. This time they claimed

that the use of the gate by the Lefkowitzes would "change the character of the community." *Id.* ¶ 105. Thereafter, the Lefkowitzes filed the Complaint in this action.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds on which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Defendants bear a heavy burden on a motion to dismiss: "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citation omitted).

The Court performs a three-step analysis on a motion to dismiss: it determines the elements plaintiffs must plead to state a claim, it accepts as true all well-pleaded factual allegations and construes the complaint in the light most favorable to plaintiff, while disregarding legal conclusions and unsupported factual allegations, and it determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement for relief." *See id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)). A complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

I.     **Plaintiffs Have Stated Claims under 42 U.S.C. § 3604 for Both a Reasonable Accommodation and a Reasonable Modification relating to the Gate – Count I.  [Responds to Defendants' Point II.A.]**

The FHA was enacted in 1968 "to eradicate discriminatory practices within a sector of our Nation's economy." *Revcock v. Cowpet Bay West Condo. Ass'n*, 853 F.3d 96, 104 (3d Cir. 2017) (quoting *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S.Ct. 2507, 2521 (2015)).  In 1988, when the FHA was extended to protect against discrimination based on disability, Congress made "a clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream." *Id.* (quoting *Hovsons, Inc. v. Twp. of Brick*, 89 F.3d 1096, 1105 (3d Cir. 1996) (emphasis and citations omitted)).  When construing the FHA, courts "are to give a '*generous construction*' to the statute's '*broad and inclusive' language*." *Id.* at 104-05 (emphasis added and citations omitted).

The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2).  Handicap discrimination under the FHA includes both claims for

15

"reasonable accommodations" in rules, policies and practices, as well as claims for "reasonable modifications" to existing premises. With respect to reasonable accommodations, the FHA provides:

> [D]iscrimination includes ... a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B).

With respect to reasonable modifications, the FHA provides:

> [D]iscrimination includes ... a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises.... 42 U.S.C. § 3604(f)(3)(A).

The "operative elements" of both accommodation and modification claims are the reasonableness and necessity of the requested accommodation and/or modification. *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014).[2] In addition to reasonableness and necessity:

> an FHA reasonable-accommodation or reasonable-modification plaintiff also must prove that she suffers from a disability, that she requested an accommodation or modification, that the defendant housing provider refused to make the accommodation or permit the modification, and that the defendant knew or should have known of the disability at the time of the refusal. *Id.* (citing *Overlook Mut. Homes,*

---

[2] This is not to suggest that claims for reasonable accommodations and reasonable modifications are indistinguishable, but only that the crux of such claims are similar. *See Berardelli v. Allied Services Institute of Rehabilitation Medicine*, 900 F.3d 104, 118 n.10 (3d Cir. 2018) (citing *Hollis* for the proposition that under the FHA reasonable accommodation and reasonable modification claims are "disguishable," unlike such claims under the Americans with Disabilities Act).

*Inc. v. Spencer*, 415 Fed. Appx. 617, 621 (6th Cir. 2011) (citing *DuBois v. Ass'n of Apart. Owners of 2987 Kalakau*, 453 F.3d 1175, 1179 (9th Cir. 2005), *cert. denied* 549 U.S. 1216 (2007))).

Defendants do not challenge the sufficiency of the allegations of the Complaint regarding reasonableness or necessity or that the Lefkowitzes suffer from disabilities, that the Defendants have refused to make the accommodation or permit the modification concerning the gate, or that the Defendants knew of the Lefkowitzes' disabilities at the time of the refusal.

Instead, Defendants argue (a) that the Court, on the face of the Complaint, should rule as a matter of law that the Lefkowitzes' request regarding the gate does not include a request for a reasonable accommodation but is solely one for a reasonable modification, (b) that the Lefkowitzes' claim for a reasonable modification should be dismissed because the Lefkowitzes did not offer to pay for the modification, even though Defendants repeatedly denied the Lefkowitzes' request regarding the gate without ever mentioning the issue of cost or who would pay, and (c) that the claim for a reasonable modification must be dismissed because the gate and access way purportedly do not exist, even though the Complaint alleges that Defendants have stated that the gate is an existing access point to Westlake.

As set forth below, Defendants' arguments are devoid of merit. "A person with a disability may need either a reasonable accommodation or a reasonable modification, *or both*, in order to have an equal opportunity to use and enjoy a

17

dwelling, ***including public and common use spaces***."[3]   *See also Moates v. Plantation Oaks Homeowner's Ass'n*, 2013 WL 5532626 *3 (M.D. Ala. Oct. 7, 2013) (denying motion to dismiss because complaint stated claims for both reasonable accommodation and reasonable modification and stating that a determination of whether the claim was for an accommodation or a modification or both was "unnecessary at this point in the litigation").  Here, the Complaint plainly states both reasonable accommodation and reasonable modification claims related to the gate, and Defendants' motion to dismiss Count I as to the gate should be denied.

> **A.   The Lefkowitzes Have Stated A Reasonable Accommodation Claim Regarding the Gate.**

The FHA requires housing providers to make "reasonable accommodations" in "rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).  Defendants argue that Rabbi Lefkowitz's request regarding the gate does not involve an accommodation at all but is solely a request for a modification.  Db9-10.  That is not correct.

---

[3] *Joint Statement of the Dept. of Housing and Urban Dev. and the Dept. of Justice: Reasonable Modifications Under the Fair Housing Act* at 6 (March 5, 2008) ("*HUD/DOJ Modification Statement")* (emphasis added).  Attached as Exhibit A to the Certification of Gregory J. Bevelock ("Bevelock Cert.").

18

As set forth in the Complaint, there currently exists a gate in an existing fence located at the end of an empty grass lot that separates Westlake's property from Gale Chambers Road.  Compl. ¶¶ 82, 100.  The gate is currently locked.  *Id.*  In denying Rabbi Lefkowitz's request that the gate be unlocked and a path for wheelchairs be installed, Defendants asserted various (albeit constantly shifting) reasons for denying the request, including that the gate *is* an access point, but solely for construction and emergency vehicles.  *Id.* ¶ 92.  The Defendants have thus asserted that there is a "rule, policy or practice" of limiting the use of the existing gate and access way to only construction and/or emergency vehicles.  The Lefkowitzes are seeking an accommodation from that rule, policy or practice by allowing the Lefkowitzes also to use the gate and access way.  This request for an accommodation from Defendants' purported rule, policy or practice is no different than any other request for relief from discriminatory rules, policies or practices.  *See, e.g., Revcock*, 853 F.3d at 110 (reasonable accommodation includes use of emotional support animal, despite rule, policy or law prohibiting such animals); *Astralis Condo. Ass'n v. Secretary, H.U.D.*, 620 F.3d 62, 64, 67 (1st Cir. 2010) (reasonable accommodation includes exclusive use of handicapped parking spaces despite rule to the contrary); *Moates*, 2013 WL 5532626 at *4 (reasonable accommodation includes relief from home owner's association covenant prohibiting detached garage and storage facility).

19

The cases relied upon by Defendants are all inapposite because, unlike here, none of them involved a homeowners association rule, policy or practice from which an accommodation was requested. *See Weiss v. 2100 Condo. Ass'n*, 941 F. Supp.2d 1337, 1344-46 (S.D. Fla. 2013) (request to construct handicap accessible ramp in lieu of staircase to beach did not involve change to HOA rule or policy and "Plaintiff's request [for repair of accessible path to the beach] is not one for the alteration of a policy or service but rather for a repair or change of the existing premises"); *Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 259-60 (E.D.N.Y. 2009) (holding that plaintiff's request to replace steps with a ramp and widen doors so that plaintiff's wheelchair could pass through doorway was request for a modification not an accommodation because the request did not require a change in a policy); *Fagundes v. Charter Builders Inc.*, 2008 WL 268977 *6 (N.D. Cal. Jan. 29, 2008) (plaintiff's request to repair front gate and door to her building were not requests for accommodations from a rule, policy, practice or service); *Rodriguez v. 551 W. 157th St. Owner's Corp.*, 992 F. Supp. 385 (S.D.N.Y. 1998) (request to construct a wheelchair ramp is not an accommodation of a rule, policy, practice or service).

The Lefkowitzes have thus stated a claim for a reasonable accommodation. They are seeking a change to the Defendants' rule, policy or practice that purportedly

limits use of the existing gate and access way to Gale Chambers Road to only construction and emergency vehicles.

### B.   The Lefkowitzes Have Stated A Reasonable Modification Claim Regarding the Gate.

Consistent with Defendants' pre-litigation strategy of denying Rabbi Lefkowitz's request regarding the gate with ever evolving reasons – first it was not "intended to be a regular access point" (Compl. ¶ 90), then it was only for construction and emergency vehicles (*id.* ¶ 92), and then it would "change the character of the community" (*id.* ¶ 105) – Defendants raise for the first time in their moving brief a fourth reason for rejecting Rabbi Lefkowitz's request regarding the gate, namely, that Rabbi Lefkowitz never offered to pay for the modification ***that Defendants refused to permit***.  Db10-12.  This argument lacks merit for several reasons.

First, while the FHA provides that reasonable modifications shall be made "at the expense of the handicapped person" (42 U.S.C. § 3604(f)(3)(A)), it is not required that such an offer be pled in a complaint.  *See Hollis*, 760 F.3d at 541 (setting forth elements of a modification claim and not including offer to pay). Indeed, none of the cases upon which Defendants rely are decisions on a motion to dismiss.  *See Weiss*, 941 F.Supp.2d at 1339 (motion for summary judgment); *Brooks v. Seattle Housing Auth.*, 2015 WL 3796232 *1 (W.D. Wash. June 18, 2015)

21

(judgment after bench trial); *Evans v. Forkids, Inc.*, 306 F. Supp. 3d 827, 829 (E.D. Va. 2018) (motion for summary judgment).

Second, unlike here, in each of the cases on which Defendants rely, the housing provider actually permitted the modification requested by the plaintiff. *Weiss*, 941 F. Supp. 2d at 1345 (condo association permitted development of ramp to beach if plaintiffs obtained plans and permits); *Brooks*, 2015 WL 3796232 at *1 (housing authority approved plaintiff's request for the installation of additional lighting in her apartment); *Evans*, 306 F. Supp. 3d at 840 (defendant permitted construction of a ramp).   Indeed, in *Weiss*, the defendants offered to contribute $7,500 towards the modification.  941 F. Supp. 2d at 1341.  And, in *Evans*, the court repeatedly stressed that the defendant "*immediately*" responded to plaintiff's request for a modification and stayed in contact on a weekly or daily basis. 306 F. Supp. 3d at 830, 840 (emphasis in original).   In contrast, here, Defendants simply and repeatedly denied Rabbi Lefkowitz's request regarding the gate and made no effort to work with the Lefkowitzes.

Third, unlike here, in each of the cases on which Defendants rely, the court made a finding that the plaintiff either refused to pay for the modification or was financially unable to do so.  *Weiss*, 941 F. Supp. 2d at 1345 ("Plaintiffs consistently refused to contribute any money toward the development of a ramp in place of a staircase."); *Brooks*, 2015 WL 3796232 at *1 ("purchasing lighting was financially

unmanageable" given plaintiff's fixed income); *Evans*, 306 F. Supp. 3d at 839 (plaintiff "was not capable of paying for" the modification at issue).

In contrast, Rabbi Lefkowitz ***has never refused to pay*** for the modification. The parties never talked about who would pay for the modification because the Defendants would not consider opening the gate and constructing the path. Rabbi Lefkowitz is willing to pay for the requested modification to the extent required by the FHA.[4]  Accordingly, the payment issue is a non-issue.  Offering to pay for the modification is not a pleading requirement.  If, however, the Court disagrees, then Plaintiffs request permission to file an amended complaint to make clear that Rabbi Lefkowitz is willing to pay for the modification.[5]

---

[4] In this regard, it bears noting that Defendants may be responsible for paying a portion of the costs of a modification. *See, e.g., HUD/DOJ Modification Statement* at 11 ("If the housing provider wishes a modification to be made with more costly material, in order to satisfy the landlord's aesthetic standards, the tenant must agree only if the housing provider pays those additional costs.") (Bevelock Cert. Ex. A). Defendants also may be required to incur costs associated with providing a reasonable accommodation. *See Joint Statement of the Dept. of Housing and Urban Dev. and the Dept. of Justice: Reasonable Accommodations under the Fair Housing Act* at 8 (May 17, 2004) ("Courts have ruled that the Act may require a housing provider to grant a reasonable accommodation that involves costs….") (Bevelock Cert. Ex. B).

[5] In a footnote, Defendants raise another new argument that they never made during the parties' pre-litigation communications.  Defendants claim that Jackson Township is a necessary party because Defendants purportedly cannot construct the requested path without the approval of Jackson Township.  Db11 n.6.  Defendants cite no authority for this proposition.  Moreover, given that a gate already exists and that Defendants have admitted it is an access way for construction and emergency vehicles, there is no basis for concluding on the face of the Complaint that Jackson

C.    **The Gate and Access Way to Gale Chambers Road are Existing Premises.**

Defendants also argue that the Lefkowitzes' reasonable modification claim must be dismissed because the gate and access way to Gale Chambers Road allegedly do not exist. According to Defendants, the "premises to be modified must already exist – the FHA does not contemplate a duty to create new premises for a Plaintiff to enjoy." Db13. *See also* Db14 (arguing that the modification is not "'necessary to afford [Plaintiffs] full enjoyment of the premises' since the premises does {sic} not exist to be enjoyed"). This argument ignores the allegations of the Complaint.

The Complaint plainly alleges that the premises exist: There is an *existing* gate at the end of an *existing* vacant lot that Defendants admit is an *existing* access way to Westlake from Gale Chambers Road. *See, e.g.,* Compl. ¶ 82 ("Rabbi Lefkowitz also requested that the gate in the fence that separates Westlake's property from Gale Chambers Road be unlocked and that a path be installed so that Rabbi Lefkowitz and his family could use the gate"), ¶ 88 ("Rabbi Lefkowitz thus asked

---

Township has any authority over the unlocking of this gate. Defendants' citation to the *Weiss* case is inapposite. Db11. There, the defendant home owners' association granted the modification subject to plaintiff obtaining DEP approval, which had jurisdiction over the ramp to the beach. *Weiss*, 941 F. Supp. 2d at 1345. Here, Defendants denied Rabbi Lefkowitz's request for a modification. Moreover, even if Jackson Township's approval for opening the gate were required, the Court can order the relief subject to the obtaining of any necessary municipal approvals.

for the accommodation from the Board to open the already existing gate and to install a path suitable for wheelchairs"), ¶ 92 (""Defendants stated that … the gate is an access point for construction and other emergency vehicles"). The Lefkowitzes are not asking Defendants to create new premises, as Defendants contend. The Lefkowitzes are asking for an accommodation and a modification so that they can use the existing access point at the gate to Gale Chambers Road.

There is nothing in the FHA, its accompanying regulations or the Joint Statement by HUD and DOJ that supports Defendants' argument. The FHA does not define "premises" or the word "existing." HUD's regulations, however, define "premises" to include "exterior spaces" and the "public and common use areas of a building." 24 C.F.R. § 100.201. "Common use areas" are, in turn, defined to include "elements … outside of a building" including "passageways among and between buildings." *Id.* Similarly, the Joint Statement issued by HUD and DOJ provides that "[r]easonable modifications can include structural changes … to common and public use areas," as well as "altering a walkway to provide access to a public or common use area" and are not "limited to the interior of a dwelling." *HUD/DOJ Modification Statement* at 3, 7. Rabbi Lefkowitz's request that Defendants open the existing gate and install a wheelchair accessible path falls squarely within the terms of the FHA, the regulations and the Joint Statement of HUD and DOJ.

Defendants' suggestion that the gate is allegedly "wholly unconnected" and "far removed" from the Lefkowitzes' home (Db12, 14) does not help their argument. The gate is close enough to the Lefkowitzes' home for them to use it, even with their handicaps (Compl. ¶¶ 87-89) and there is nothing in the FHA that requires the modification be physically connected to Rabbi Lefkowitz' home.  Premises include "exterior spaces" and "public and common use areas of a building," "elements … outside of a building" including "passageways among and between buildings." 24 C.F.R. § 100.201.  Indeed, *Weiss v. 2100 Condo. Ass'n, Inc.* – a case relied upon by Defendants in a different section of their brief – vitiates Defendants' argument.   In the words of Defendants' brief, the plaintiffs in *Weiss* made "a factually-analogous request to an HOA" to replace the aluminum stairs that provided access to the beach with a new, handicap accessible ramp. Db9 (citing *Weiss*, 941 F. Supp. 2d at 1344).  Those stairs were not connected to plaintiffs' condominium.  *See Weiss*, 941 F. Supp. 2d at *1341 (stairs were centrally located in the community). The court nonetheless found that the request "to construct a handicap accessible ramp in lieu of a staircase" constituted a claim for a reasonable modification.  *Id.* at 1344-45.[6]

---

[6] The court in *Weiss* granted summary judgment against the plaintiff only because the plaintiff refused to contribute money for the ramp or obtain the proper plans and permits. *Weiss*, 941 F. Supp. 2d at 1344-46.

26

Finally, Defendants' argument that only accommodations, and not modifications, are available for "common use areas" (Db 14.n.8) is contradicted by HUD's regulations. Those regulations specifically define "modification" to mean "any change to the public or common use areas of a building[.]" 24 C.F.R. § 100.201. Defendants also mischaracterize the Lefkowitzes' request as seeking to limit the use of the gate to the Lefkowitzes alone. Db14 n.8. The Lefkowitzes made that proposal solely in a good faith attempt to alleviate the alleged concerns of Defendants, who claimed that the gate was never intended to be a general access point. Compl. ¶¶ 92-96. The Lefkowitzes certainly have no objection to the gate being open to all.

In sum, Defendants' argument that the premises do not exist finds no support in the Complaint, the FHA, its accompanying regulations, or the case law. Rather, Defendants' argument is based on their own idiosyncratic interpretation of the statute that runs afoul of the Third Circuit's admonition that courts "are to give a 'generous construction' to the statute's 'broad and inclusive' language." *Revock*, 853 F.3d at 104-05 (citations omitted). Plaintiffs' motion should be denied.

## II.   Plaintiffs Have Stated a Claim under 42 U.S.C. § 3617 for Interference with Plaintiffs' Rights Protected by the FHA – Count II. [Responds to Defendants' Point II.B.]

Count II of the Lefkowitzes' Complaint states a claim against Defendants for violations of Section 3617 of the FHA. That section of the FHA provides that "[i]t

shall be unlawful to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."  42 U.S.C. § 3617.

Defendants argue that this claim should be dismissed because the Lefkowitzes purportedly failed to plead that Defendants engaged in any conduct that would rise to the level of "interference" under Section 3617.  Db15.  Defendants' argument, however, is based on the wrong law – a 1992 Eastern District of Michigan case rather than the controlling, 2017 Third Circuit precedent in *Revcock v. Cowpet Bay West Condo. Ass'n*, 853 F.3d 96 (3d Cir. 2017), which Defendants do not cite.

Specifically, Defendants rely on *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 799 F. Supp. 695, 724-25 (E.D. Mich. 1992), *aff'd* 18 F.3d 337 (6th Cir. 1994). Db16-17.  In *Babin*, the district court first noted that the word "interfere" has a "very broad meaning" that signifies both "hindrance and trespass," and that *Black's Law Dictionary* defines interference to mean "[t]o enter into, or take part in, the concerns of others." *Id.* at 724.  The *Babin* court then rejected the dictionary definition of interference as too broad because it allegedly would result in Section 3617 covering "a whole range of otherwise innocuous acts." *Id.*  The court concluded that "interfere" must have "a more direct, restricted meaning in this context, namely, *the*

28

***use of threat of force, coercion or duress*** to hinder valid housing rights." *Id.* (emphasis added).

The Third Circuit's 2017 *Revcock* decision rejects this unduly restrictive definition of "interference."[7]   There, the Third Circuit held that, because the term "interference" is not defined by the Fair Housing Act or the implementing regulation, "***the word must be 'understood by its ordinary meaning***.'" *Revcock*, 853 F.3d at 113 (quoting *United States v. Piekarsky*, 687 F.3d 134, 145 (3d Cir.), *cert. denied* 568 U.S. 889 (2012)) (emphasis added).   The Third Circuit then noted with approval that the Ninth Circuit "has construed 'interference' for the purposes of Section 3617 ***according to a dictionary definition*** as, 'the act of meddling in or hampering an activity or process.'"   *Id.* (quoting *Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001), *cert. denied* 535 U.S. 1017 (2002) (quoting Webster's Third New Int'l Dict. 1178 (14th ed. 1961))).   As such, "interference" is "***broadly applied*** to reach ***all practices*** which have the effect of interfering with the exercise of rights under the federal fair housing laws." *Id.* (citations and internal quotation marks omitted) (emphasis added).   "Interference does ***not*** require force or threat of force."   *Id.* (citations and internal quotation marks omitted) (emphasis

---

[7] Defendants' brief states that courts in the Third Circuit "have repeatedly cited to, and adopted, the *Babin* court's interpretation of Section 3617."  Db17.  The cases cited by Defendants are all Eastern District of Pennsylvania cases, the most recent of which is from 2006 – more than ten years prior to the Third Circuit's decision in *Revcock*. *See* Db17 (citing cases).

added).   The Third Circuit noted, however, that the prohibition on interference "cannot be so broad as to prohibit any action whatsoever that in any way hinders a member of a protected class."   *Id.* (citations and internal quotation marks omitted) (emphasis added).

In *Revcock*, plaintiffs sought accommodations in the form of emotional support animals, which were not permitted under the rules of their condominium association. *Revcock*, 853 F.3d at 910.  Plaintiffs sued the association (Cowpet) and the condo board president asserting claims for both a reasonable accommodation and for interference under Section 3617.[8]  The crux of the Section 3617 claim against the association and its president was that they "failed to review [plaintiffs'] requests for a reasonable accommodation of their disabilities." *Id.* at 114.  The Third Circuit held that, if plaintiffs could prove that defendants failed to review their request for an accommodation, then "Cowpet did 'interfere'" with plaintiffs' rights.  *Id.* Because there was a dispute of fact as to whether defendants failed to review the request or whether plaintiffs instructed them not to review the request, the Third

---

[8] The *Revcock* plaintiffs also asserted claims under Section 3617 against several neighbors for harassing them with internet posts and otherwise.  The Third Circuit held that interference under Section 3617 may also include harassment, provided that it is "sufficiently severe or pervasive" as to create a hostile environment. *Revcock*, 853 F.3d at 113 (citations omitted).  This portion of *Revcock* is not relevant to this case as the Lefkowitzes have not asserted any claims against neighbors for harassment.

Circuit reversed the grant of summary judgment and remanded the case for further proceedings. *Id.*

Here, the Lefkowitzes have alleged far more than that Defendants failed to review their requests regarding the gate. Contrary to Defendants' argument (Db15), the Complaint does not simply allege that Defendants denied the Lefkowitzes' request regarding the gate. Rather, the Complaint alleges an almost two-year campaign of discrimination by Defendants against the Lefkowitzes. While Defendants try to shield the Court from their discriminatory acts regarding the sukkah, those allegations are highly relevant. In particular, Defendants denied and/or refused to even acknowledge Rabbi Lefkowitz's requests regarding the sukkah for well over a year. Compl. ¶¶ 41, 76. During that time, Defendants denied Rabbi Lefkowitz's requests regarding the sukkah by making false statements that "permanent structures" are not permitted and that a screened porch is "not available" on his model home (*id.* ¶¶ 56, 65), and refused to engage in any good faith dialogue with Rabbi Lefkowitz concerning his request for a permanent screened porch that can be used as a sukkah (*see, e.g., id.* ¶¶ 59, 64). Moreover, as Rabbi Lefkowitz stated in a letter to Ms. Rivere, Defendants' "apparent belief that some resident's objections to the mere presence of a sukkah must be taken into consideration when formulating the Association's rules is nothing more than religious bigotry." *Id.* ¶ 61.

31

Defendants' actions with respect to the gate are of a piece with their actions regarding the sukkah. As noted above, Defendants have provided constantly shifting reasons for rejecting Rabbi Lefkowitz's request regarding the gate: first it was not "intended to be a regular access point" (Compl. ¶ 90), then it was only for construction and emergency vehicles (*id.* ¶ 92), and then it would "change the character of the community" (*id.* ¶ 105). Now in their brief, Defendants raise for the first time an additional reason: that the Lefkowitzes never offered to pay for the modification that Defendants never permitted. Db10-11. The constantly shifting reasons for denying Rabbi Lefkowitz's request plausibly imply that these reasons are all pretextual and are no different than the failure to review that the Third Circuit held would constitute interference in *Revcock*, *supra*.

Most troubling is Defendants' statement that the use of the gate by the Lefkowitzes would "change the character of the community." *Id.* ¶ 105. Given that the Lefkowitzes are the first and only Orthodox Jewish family to live in Westlake (*id.* ¶ 33) and that Orthodox Jewish families are moving onto Gale Chambers Road on the other side of the gate where Rabbi Lefkowitz's daughter lives (*id.* ¶¶ 32, 34), a more than plausible inference is that the change "in character" that Defendants are seeking to prevent is the presence of Orthodox Jewish families in Westlake. When these allegations are combined with the allegations regarding Defendants' discriminatory conduct with respect to Rabbi Lefkowitz's attempt to fulfill his

religious obligations by being able to construct a sukkah that he and his sons can actually use, the Complaint more than sufficiently alleges not only that Defendants interfered with the Lefkowitzes' rights under the FHA based on their handicaps, but also based on their religion.  *See* Compl. ¶ 116 ("by doing all of the foregoing because of the Lefkowitzes' religion, Defendants interfered with the Lefkowitzes' rights under the FHA").  *See also Bloch v. Frischholz*, 587 F.3d 771, 782 (7th Cir. 2009) ("interfering with persons in the enjoyment of a dwelling because of the . . . religion . . . of such persons" violates 42 U.S.C. § 3617) (citing 24 C.F.R. § 100.400(c)(2)).

Finally, Defendants argue that because the Lefkowitzes (purportedly) "*had no right* under Section 3604 of the FHA to require the Westlake HOA to construct a path and gate," Defendants could not have interfered with the exercise and enjoyment of any right afforded by Section 3604.  Db17 (emphasis in original).  The Third Circuit in *Revcock*, however, also rejected this argument.  "A Section 3617 claim does not require a substantive violation of Sections 3603-3606."  *Revcock*, 853 F.3d at 929 (citing cases, including, *Bloch*, 587 F.3d at 782).

For all these reasons, the Complaint states a claim for relief under 42 U.S.C. § 3617.

33

### III.  Plaintiffs Have Stated a Claim for Violations of the New Jersey Law Against Discrimination – Count III.  [Responds to Defendants' Point III]

Like the FHA, a failure to provide a reasonable accommodation or permit a reasonable modification is a violation of the NJLAD.  The NJLAD provides that "[a]ll persons shall have the opportunity to obtain … all the accommodations, advantages, facilities, and privileges of … real property without discrimination because of … creed … [or] disability[.]"  N.J.S.A. 10:5-4.  It is unlawful to "discriminate against any person or group of persons because of a … creed … [or] disability … in the terms, conditions or privileges of the sale, rental or lease of any real property … or in the furnishing of facilities or services in connection therewith."  N.J.S.A. 10:5-12(g)(2).  In language similar but not identical to FHA, the Administrative Code accompanying the NJLAD makes it unlawful for any person to:

1. Refuse to permit, at the expense of the person with a disability, reasonable modifications of existing premises occupied or to be occupied by the person with a disability, if the modifications may be necessary to afford the person with a disability full enjoyment of the premises …. and

2. Refuse to make reasonable accommodations in rules, policies, practices or services, or reasonable structural modifications, when such accommodations or modifications may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling, including public and common areas.  N.J.A.C. 13:13-3.4(f).

Given the similarity in language, Defendants' sole argument to dismiss the Lefkowitzes' claim under the NJLAD is, not surprisingly, that it "fails for the same reason their FHA claims fail."  Db18.  For the same reasons set forth in detail above (*see* Argument, Sections I & II *supra*), the Complaint states claims upon relief can be granted for a reasonable accommodation and a reasonable modification under both the FHA and NJLAD, as well as for discrimination or inference with the rights of the Lefkowitzes due to their handicaps and religion.  Defendants' motion to dismiss Count III should be denied.

## IV.    Plaintiffs Have Stated a Claim for Violations of the Planned Real Estate Development Full Disclosure Act ("PREDFDA") – Count V.  [Responds to Defendants' Point IV].

PREDFDA provides that a homeowners association "shall exercise its powers and discharge its functions in a manner that protects and furthers the health, safety and general welfare of the residents of the community."  N.J.S.A.  45:22A-44(b).  The Complaint alleges that Defendants violated the PREDFDA as follows:

131.   Defendants violated this section by not granting the Lefkowitzes' requests regarding the screened porch / sukkah and gate onto Gale Chambers Road.

132.   Interfering with the Lefkowitzes' ability to practice their religion by not permitting the requested screened porch / sukkah does not protect the health, safety and general welfare of the residents of Westlake.

133.   Refusing to allow the Lefkowitzes to use the existing gate onto Gale Chambers Road, thereby forcing them to travel in their wheelchairs on a busy road that does not have sidewalks or even a

shoulder for large stretches does not protect the health, safety and general welfare of the residents of Westlake.  Compl. ¶¶ 131-133.

Defendants' sole argument as to this count of the Complaint is that because the FHA and NJLAD purportedly do not require Defendants to open the gate and construct a path, it is "nonsensical" to conclude that Defendants violated the PREDFDA.  Db19.  But, as set forth above, the Complaint does state claims for which relief can be granted under the FHA and NJLAD.  Accordingly, Defendants' argument lacks merit and the Lefkowitzes have stated a claim for violation of the PREDFA.

## V.   Plaintiffs Have Stated a Claim for Aiding and Abetting against the Individual Board Members – Count VI.  [Responds to Defendants' Point V].

The NJLAD makes it unlawful "[f]or any person, whether an employer or employee or not, to aid, abet incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."  N.J.S.A. 10:5-12(e).  The New Jersey Supreme Court has held that to hold someone liable as an aider and abettor, a plaintiff must show that:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of the overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal in the violation. *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004) (citation omitted).

Defendants assert three arguments in support of their motion to dismiss Count VI[9]:   First, Defendants argue the Complaint does not allege a "wrongful act" performed by any of the Defendants, and that the closest the Complaint comes to alleging a wrongful act is defendant Rivere's May 8, 2018 letter denying Rabbi Lefkowitz's request regarding the gate and Defendants' denial of the request at the September 20, 2018 meeting.   Db20.   Second, Defendants claim the Complaint merely parrots the elements of aiding and abetting and does not provide any details regarding Defendants' wrongful acts.   Db20-21 (citing only ¶¶ 136-37 of the Complaint).   Third, Defendants argue that a claim for aiding and abetting cannot

---

[9] The claim for aiding and abetting is pled in the alternative to the individual Board Member defendants' direct, personal liability for the violations of the FHA and NJLAD, which are pled in Counts I, II and III of the Complaint.  Individual board members can be held liable when they have "personally committed or contributed to a Fair Housing Act violation."  *Falin v. Condo. Ass'n of La Mer Estates, Inc.*, 2011 WL 5508654 *3 (Nov. 9, 2011) (denying motion to dismiss claim against condo board president who wrote letters denying accommodation on behalf of the condo board with knowledge that an FHA issue had been raised).  *See also Andujar v. Hewitt*, 2002 WL 1792065 *10 (S.D.N.Y. Aug. 2, 2002) ("Aggrieved persons have long been permitted to assert Fair Housing Act claims against individual defendants who engaged in affirmative acts of discrimination or enforced a corporation's discriminatory rules or policies").  Here, the individual Board Members are responsible for the management of the defendant HOA (Compl. ¶ 19) and made all the decisions denying Rabbi Lefkowitz's requests regarding the gate and conveyed those decisions to Rabbi Lefkowitz typically through the board president, defendant Rivere.  *See, e.g., id.* ¶¶ 55, 63, 76, 90.  In their motion, Defendants have not challenged the defendant Board Members' direct, personal liability under the FHA and NJLAD.

exist where the underlying causes of action for violation of the FHA and NJLAD fail.  Db21.

Defendants' arguments lack merit because they are based on the faulty premise that the Complaint fails to state claims for violations of the FHA and NJLAD and the arguments ignore the actual allegations in the Complaint.  As set forth in detail above, the Complaint – in great detail – states claims upon which relief can be granted for Defendants' failure to grant an accommodation and/or permit a modification with respect to the gate in violation of both the FHA and NJLAD.  *See* Argument, Section I & III *supra*.  The Complaint – again in great detail – also states a claim against Defendants for discrimination against the Lefkowitzes on the basis of their handicaps and their religion.  *See* Argument, Section II & III *supra*.

All the alleged discriminatory actions were ***necessarily*** taken by the defendant Board Members because it is only the Board Members who could and did act on behalf of the defendant Association.  *See* Compl. ¶ 19 (the Board is responsible for the management of the Association).  The Complaint plainly alleges that, while the Board's discriminatory decisions were typically communicated to Rabbi Lefkowitz by defendant Rivere, the Board president, she was acting on behalf of all of the Board Members.  *See, e.g., id.* ¶ 63 (letter from defendant Rivere stating that "***[t]he Board*** has reviewed your request" for a screened porch / succah, stating (falsely) that screened porches are not permitted on Rabbi Lefkowitz's home, and stating that "***the***

**Board's position** remains unchanged"); ¶ 90 (Rivere letter stating that in "**the Board's opinion** it [is] not in the best interests of community as a whole" to grant Rabbi Lefkowitz's request regarding the gate); ¶ 105 ("Defendants proffered their third different purported justification denying the Lefkowitzes' request [regarding the gate]. Now they claimed that the use of the gate by the Lefkowitzes would 'change the character of the community.'"). *See also* 03/28/2018 B. Rivere Ltr. to Rabbi Lefkowitz (directing Rabbi Lefkowitz to submit request for an accommodation "to **the Board of Trustees**")[10] (emphasis added in all quotations).

In short, the allegations of the Complaint clearly allege that (a) Defendants violated the FHA and NJLAD; (b) that the individual Board Members were aware of their role in these violations; and (c) that the individual Board Members knowingly and substantially assist the principal in the violation (indeed, the individual Board Members directly committed the violations). *See Tarr v. Ciasulli*, 181 N.J. at 84. The Complaint thus states a claim for aiding and abetting.

---

[10] Defendant Rivere's letter, which is refenced in ¶ 76 of the Complaint, is attached as Exhibit C to the Bevelock Cert. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (stating that when "evaluating a motion to dismiss, [a court] may consider … any matters incorporated by reference or integral to the claim").

## CONCLUSION

For the reasons set forth above, Defendants' partial motion to dismiss should be denied.

Respectfully submitted,

**BEVELOCK & FISHER LLC**

*/s Gregory J. Bevelock*
Gregory J. Bevelock

Dated: January 18, 2019

40