# EXHIBIT A



**U.S. DEPARTMENT OF JUSTICE**
CIVIL RIGHTS DIVISION



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
OFFICE OF FAIR HOUSING AND EQUAL OPPORTUNITY

*Washington, D.C.*
*March 5, 2008*

## JOINT STATEMENT OF
## THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
## AND THE DEPARTMENT OF JUSTICE

### *REASONABLE MODIFICATIONS UNDER THE*
### *FAIR HOUSING ACT*

**Introduction**

The Department of Justice ("DOJ") and the Department of Housing and Urban Development ("HUD") are jointly responsible for enforcing the federal Fair Housing Act[1] (the "Act"), which prohibits discrimination in housing on the basis of race, color, religion, sex, national origin, familial status, and disability.[2] One type of disability discrimination prohibited by the Act is a refusal to permit, at the expense of the person with a disability, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises.[3] HUD and DOJ frequently respond to complaints alleging that housing providers have violated the Act by refusing reasonable modifications to persons with disabilities. This Statement provides technical assistance regarding the rights and obligations of persons with disabilities and housing providers under the Act relating to reasonable modifications.[4]

---

[1] The Fair Housing Act is codified at 42 U.S.C. §§ 3601-3619.

[2] The Act uses the term "handicap" instead of "disability." Both terms have the same legal meaning. See Bragdon v. Abbott, 524 U.S. 624, 631 (1998) (noting that the definition of "disability" in the Americans with Disabilities Act is drawn almost verbatim "from the definition of 'handicap' contained in the Fair Housing Amendments Act of 1988"). This document uses the term "disability," which is more generally accepted.

[3] 42 U.S.C. § 3604(f)(3)(A).

[4] This Statement does not address the principles relating to reasonable accommodations. For further information see the Joint Statement of the Department of Housing and Urban

This Statement is not intended to provide specific guidance regarding the Act's design and construction requirements for multifamily dwellings built for first occupancy after March 13, 1991. Some of the reasonable modifications discussed in this Statement are features of accessible design that are required for covered multifamily dwellings pursuant to the Act's design and construction requirements. As a result, people involved in the design and construction of multifamily dwellings are advised to consult the Act at 42 U.S.C. § 3604(f)(3)(c), the implementing regulations at 24 C.F.R. § 100.205, the Fair Housing Accessibility Guidelines, and the Fair Housing Act Design Manual. All of these are available on HUD's website at www.hud.gov/offices/fheo/disabilities/index.cfm. Additional technical guidance on the design and construction requirements can also be found on HUD's website and the Fair Housing Accessibility FIRST website at: http://www.fairhousingfirst.org.

**Questions and Answers**

**1.     What types of discrimination against persons with disabilities does the Act prohibit?**

The Act prohibits housing providers from discriminating against housing applicants or residents because of their disability or the disability of anyone associated with them and from treating persons with disabilities less favorably than others because of their disability. The Act makes it unlawful for any person to refuse "to permit, at the expense of the [disabled] person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises, except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted."[5] The Act also makes it unlawful for any person to refuse "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford ... person(s) [with disabilities] equal opportunity to use and enjoy a dwelling." The Act also prohibits housing providers from refusing residency to persons with disabilities, or, with some narrow exceptions[6],

---

Development and the Department of Justice: Reasonable Accommodations Under the Fair Housing Act, dated May 17, 2004. This Joint Statement is available at www.hud.gov/offices/fheo/disabilities/index.cfm and http://www.usdoj.gov/crt/housing/jointstatement_ra.htm. See also 42 U.S.C. § 3604(f)(3)(B).

This Statement also does not discuss in depth the obligations of housing providers who are recipients of federal financial assistance to make and pay for structural changes to units and common and public areas that are needed as a reasonable accommodation for a person's disability. See Question 31.

[5] 42 U.S.C. § 3604(f)(3)(A). HUD regulations pertaining to reasonable modifications may be found at 24 C.F.R. § 100.203.

[6] The Act contemplates certain limits to the receipt of reasonable accommodations or reasonable modifications. For example, a tenant may be required to deposit money into an interest bearing

placing conditions on their residency, because those persons may require reasonable modifications or reasonable accommodations.

**2.      What is a reasonable modification under the Fair Housing Act?**

A reasonable modification is a structural change made to existing premises, occupied or to be occupied by a person with a disability, in order to afford such person full enjoyment of the premises. Reasonable modifications can include structural changes to interiors and exteriors of dwellings and to common and public use areas. A request for a reasonable modification may be made at any time during the tenancy. The Act makes it unlawful for a housing provider or homeowners' association to refuse to allow a reasonable modification to the premises when such a modification may be necessary to afford persons with disabilities full enjoyment of the premises.

To show that a requested modification may be necessary, there must be an identifiable relationship, or nexus, between the requested modification and the individual's disability. Further, the modification must be "reasonable." Examples of modifications that typically are reasonable include widening doorways to make rooms more accessible for persons in wheelchairs; installing grab bars in bathrooms; lowering kitchen cabinets to a height suitable for persons in wheelchairs; adding a ramp to make a primary entrance accessible for persons in wheelchairs; or altering a walkway to provide access to a public or common use area. These examples of reasonable modifications are not exhaustive.

**3.      Who is responsible for the expense of making a reasonable modification?**

The Fair Housing Act provides that while the housing provider must permit the modification, the tenant is responsible for paying the cost of the modification.

**4.      Who qualifies as a person with a disability under the Act?**

The Act defines a person with a disability to include (1) individuals with a physical or mental impairment that substantially limits one or more major life activities; (2) individuals who are regarded as having such an impairment; and (3) individuals with a record of such an impairment.

The term "physical or mental impairment" includes, but is not limited to, such diseases and conditions as orthopedic, visual, speech and hearing impairments, cerebral palsy, autism, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, Human Immunodeficiency Virus infection, mental retardation, emotional illness, drug addiction (other

---

account to ensure that funds are available to restore the interior of a dwelling to its previous state. See, e.g., Question 21 below. A reasonable accommodation can be conditioned on meeting reasonable safety requirements, such as requiring persons who use motorized wheelchairs to operate them in a manner that does not pose a risk to the safety of others or cause damage to other persons' property. See Joint Statement on Reasonable Accommodations, Question 11.

than addiction caused by current, illegal use of a controlled substance) and alcoholism.

The term "substantially limits" suggests that the limitation is "significant" or "to a large degree."

The term "major life activity" means those activities that are of central importance to daily life, such as seeing, hearing, walking, breathing, performing manual tasks, caring for one's self, learning, and speaking. This list of major life activities is not exhaustive.

**5.     Who is entitled to a reasonable modification under the Fair Housing Act?**

Persons who meet the Fair Housing Act's definition of "person with a disability" may be entitled to a reasonable modification under the Act. However, there must be an identifiable relationship, or nexus, between the requested modification and the individual's disability. If no such nexus exists, then the housing provider may refuse to allow the requested modification.

**Example 1:** A tenant, whose arthritis impairs the use of her hands and causes her substantial difficulty in using the doorknobs in her apartment, wishes to replace the doorknobs with levers. Since there is a relationship between the tenant's disability and the requested modification and the modification is reasonable, the housing provider must allow her to make the modification at the tenant's expense.

**Example 2**: A homeowner with a mobility disability asks the condo association to permit him to change his roofing from shaker shingles to clay tiles and fiberglass shingles because he alleges that the shingles are less fireproof and put him at greater risk during a fire. There is no evidence that the shingles permitted by the homeowner's association provide inadequate fire protection and the person with the disability has not identified a nexus between his disability and the need for clay tiles and fiberglass shingles. The homeowner's association is not required to permit the homeowner's modification because the homeowner's request is not reasonable and there is no nexus between the request and the disability.

**6.     If a disability is not obvious, what kinds of information may a housing provider request from the person with a disability in support of a requested reasonable modification?**

A housing provider may not ordinarily inquire as to the nature and severity of an individual's disability. However, in response to a request for a reasonable modification, a housing provider may request reliable disability-related information that (1) is necessary to verify that the person meets the Act's definition of disability (i.e., has a physical or mental impairment that substantially limits one or more major life activities), (2) describes the needed modification, and (3) shows the relationship between the person's disability and the need for the requested modification. Depending on the individual's circumstances, information verifying that the person meets the Act's definition of disability can usually be provided by the individual herself (e.g., proof that an individual under 65 years of age receives Supplemental Security

4

Income or Social Security Disability Insurance benefits[8] or a credible statement by the individual).  A doctor or other medical professional, a peer support group, a non-medical service agency, or a reliable third party who is in a position to know about the individual's disability may also provide verification of a disability.  In most cases, an individual's medical records or detailed information about the nature of a person's disability is not necessary for this inquiry.

Once a housing provider has established that a person meets the Act's definition of disability, the provider's request for documentation should seek only the information that is necessary to evaluate if the reasonable modification is needed because of a disability.  Such information must be kept confidential and must not be shared with other persons unless they need the information to make or assess a decision to grant or deny a reasonable modification request or unless disclosure is required by law (e.g., a court-issued subpoena requiring disclosure).

**7.     What kinds of information, if any, may a housing provider request from a person with an obvious or known disability who is requesting a reasonable modification?**

A housing provider is entitled to obtain information that is necessary to evaluate whether a requested reasonable modification may be necessary because of a disability.  If a person's disability is obvious, or otherwise known to the housing provider, and if the need for the requested modification is also readily apparent or known, then the provider may not request any additional information about the requester's disability or the disability-related need for the modification.

If the requester's disability is known or readily apparent to the provider, but the need for the modification is not readily apparent or known, the provider may request only information that is necessary to evaluate the disability-related need for the modification.

**Example 1:**  An applicant with an obvious mobility impairment who uses a motorized scooter to move around asks the housing provider to permit her to install a ramp at the entrance of the apartment building.  Since the physical disability (i.e., difficulty walking) and the disability-related need for the requested modification are both readily apparent, the provider may not require the applicant to provide any additional information about her disability or the need for the requested modification.

---

[8] Persons who meet the definition of disability for purposes of receiving Supplemental Security Income ("SSI") or Social Security Disability Income ("SSDI") benefits in most cases meet the definition of a disability under the Fair Housing Act, although the converse may not be true. See, e.g., Cleveland v. Policy Management Systems Corp, 526 U.S. 795, 797 (1999) (noting that SSDI provides benefits to a person with a disability so severe that she is unable to do her previous work and cannot engage in any other kind of substantial gainful work whereas a person pursuing an action for disability discrimination under the Americans with Disabilities Act may state a claim that "with a reasonable accommodation" she could perform the essential functions of the job).

5

**Example 2:**  A deaf tenant asks his housing provider to allow him to install extra electrical lines and a cable line so the tenant can use computer equipment that helps him communicate with others.  If the tenant's disability is known, the housing provider may not require him to document his disability; however, since the need for the electrical and cable lines may not be apparent, the housing provider may request information that is necessary to support the disability-related need for the requested modification.

**8.     Who must comply with the Fair Housing Act's reasonable modification requirements?**

Any person or entity engaging in prohibited conduct – i.e., refusing to allow an individual to make reasonable modifications when such modifications may be necessary to afford a person with a disability full enjoyment of the premises – may be held liable unless they fall within an exception to the Act's coverage.  Courts have applied the Act to individuals, corporations, associations and others involved in the provision of housing and residential lending, including property owners, housing managers, homeowners and condominium associations, lenders, real estate agents, and brokerage services.  Courts have also applied the Act to state and local governments, most often in the context of exclusionary zoning or other land-use decisions.  See, e.g., City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 729 (1995); Project Life v. Glendening, 139 F. Supp. 2d 703, 710 (D. Md. 2001), aff'd, 2002 WL 2012545 (4th Cir. 2002).

**9.     What is the difference between a *reasonable accommodation* and a *reasonable modification* under the Fair Housing Act?[9]**

Under the Fair Housing Act, a reasonable *modification* is a structural change made to the premises whereas a reasonable *accommodation* is a change, exception, or adjustment to a rule, policy, practice, or service.  A person with a disability may need either a reasonable accommodation or a reasonable modification, or both, in order to have an equal opportunity to use and enjoy a dwelling, including public and common use spaces.  Generally, under the Fair Housing Act, the housing provider is responsible for the costs associated with a reasonable accommodation unless it is an undue financial and administrative burden, while the tenant or someone acting on the tenant's behalf, is responsible for costs associated with a reasonable modification.  See Reasonable Accommodation Statement, Questions 7 and 8.

**Example 1:**  Because of a mobility disability, a tenant wants to install grab bars in the bathroom.  This is a reasonable modification and must be permitted at the tenant's expense.

---

[9] Housing providers that receive federal financial assistance are also subject to the requirements of Section 504 of the Rehabilitation Act of l973.  29 U.S.C. § 794.  Section 504, and its implementing regulations at 24 C.F.R. Part 8, prohibit discrimination based on disability, and obligate housing providers to make and pay for structural changes to facilities, if needed as a reasonable accommodation for applicants and tenants with disabilities, unless doing so poses an undue financial and administrative burden.  See Question 31.

**Example 2:** Because of a hearing disability, a tenant wishes to install a peephole in her door so she can see who is at the door before she opens it. This is a reasonable modification and must be permitted at the tenant's expense.

**Example 3**: Because of a mobility disability, a tenant wants to install a ramp outside the building in a common area. This is a reasonable modification and must be permitted at the tenant's expense. See also Questions 19, 20 and 21.

**Example 4**: Because of a vision disability, a tenant requests permission to have a guide dog reside with her in her apartment. The housing provider has a "no-pets" policy. This is a request for a reasonable accommodation, and the housing provider must grant the accommodation.

**10.    Are reasonable modifications restricted to the interior of a dwelling?**

No. Reasonable modifications are not limited to the interior of a dwelling. Reasonable modifications may also be made to public and common use areas such as widening entrances to fitness centers or laundry rooms, or for changes to exteriors of dwelling units such as installing a ramp at the entrance to a dwelling.

**11.    Is a request for a parking space because of a physical disability a *reasonable accommodation* or a *reasonable modification*?**

Courts have treated requests for parking spaces as requests for a reasonable accommodation and have placed the responsibility for providing the parking space on the housing provider, even if provision of an accessible or assigned parking space results in some cost to the provider. For example, courts have required a housing provider to provide an assigned space even though the housing provider had a policy of not assigning parking spaces or had a waiting list for available parking. However, housing providers may not require persons with disabilities to pay extra fees as a condition of receiving accessible parking spaces.

Providing a parking accommodation could include creating signage, repainting markings, redistributing spaces, or creating curb cuts. This list is not exhaustive.

**12.    What if the structural changes being requested by the tenant or applicant are in a building that is subject to the design and construction requirements of the Fair Housing Act and the requested structural changes are a feature of accessible design that should have already existed in the unit or common area, e.g., doorways wide enough to accommodate a wheelchair, or an accessible entryway to a unit.**

The Fair Housing Act provides that covered multifamily dwellings built for first occupancy after March 13, 1991, shall be designed and constructed to meet certain minimum accessibility and adaptability standards.  If any of the structural changes needed by the tenant are ones that should have been included in the unit or public and common use area when constructed then the housing provider may be responsible for providing and paying for those requested structural changes.  However, if the requested structural changes are not a feature of accessible design that should have already existed in the building pursuant to the design and construction requirements under the Act, then the tenant is responsible for paying for the cost of the structural changes as a reasonable modification.

Although the design and construction provisions only apply to certain multifamily dwellings built for first occupancy since 1991, a tenant may request reasonable modifications to housing built prior to that date.  In such cases, the housing provider must allow the modifications, and the tenant is responsible for paying for the costs under the Fair Housing Act.

For a discussion of the design and construction requirements of the Act, and their applicability, see HUD's website at: www.hud.gov/offices/fheo/disabilities/index.cfm and the Fair Housing Accessibility FIRST website at: http://www.fairhousingfirst.org.

**Example 1:**  A tenant with a disability who uses a wheelchair resides in a ground floor apartment in a non-elevator building that was built in 1995.  Buildings built for first occupancy after March 13, 1991 are covered by the design and construction requirements of the Fair Housing Act.  Because the building is a non-elevator building, all ground floor units must meet the minimum accessibility requirements of the Act.  The doors in the apartment are not wide enough for passage using a wheelchair in violation of the design and construction requirements but can be made so through retrofitting.  Under these circumstances, one federal court has held that the tenant may have a potential claim against the housing provider.

**Example 2:**  A tenant with a disability resides in an apartment in a building that was built in 1987.  The doors in the unit are not wide enough for passage using a wheelchair but can be made so through retrofitting.  If the tenant meets the other requirements for obtaining a modification, the tenant may widen the doorways, at her own expense.

**Example 3:**  A tenant with a disability resides in an apartment in a building that was built in 1993 in compliance with the design and construction requirements of the Fair Housing Act.  The tenant wants to install grab bars in the bathroom because of her disability.  Provided that the tenant meets the other requirements for obtaining a modification, the tenant may install the grab bars at her own expense.

**13.   Who is responsible for expenses associated with a reasonable modification, e.g., for upkeep or maintenance?**

The tenant is responsible for upkeep and maintenance of a modification that is used exclusively by her.  If a modification is made to a common area that is normally maintained by the housing provider, then the housing provider is responsible for the upkeep and maintenance of the modification.  If a modification is made to a common area that is not normally maintained by

the housing provider, then the housing provider has no responsibility under the Fair Housing Act to maintain the modification.

**Example 1:** Because of a mobility disability, a tenant, at her own expense, installs a lift inside her unit to allow her access to a second story. She is required to maintain the lift at her expense because it is not in a common area.

**Example 2**: Because of a mobility disability, a tenant installs a ramp in the lobby of a multifamily building at her own expense. The ramp is used by other tenants and the public as well as the tenant with the disability. The housing provider is responsible for maintaining the ramp.

**Example 3**: A tenant leases a detached, single-family home. Because of a mobility disability, the tenant installs a ramp at the outside entrance to the home. The housing provider provides no snow removal services, and the lease agreement specifically states that snow removal is the responsibility of the individual tenant. Under these circumstances, the housing provider has no responsibility under the Fair Housing Act to remove snow on the tenant's ramp. However, if the housing provider normally provides snow removal for the outside of the building and the common areas, the housing provider is responsible for removing the snow from the ramp as well.

**14.   In addition to current residents, are prospective tenants and buyers of housing protected by the reasonable modification provisions of the Fair Housing Act?**

Yes. A person may make a request for a reasonable modification at any time. An individual may request a reasonable modification of the dwelling at the time that the potential tenancy or purchase is discussed. Under the Act, a housing provider cannot deny or restrict access to housing because a request for a reasonable modification is made. Such conduct would constitute discrimination. The modification does not have to be made, however, unless it is reasonable. See Questions 2, 16, 21 and 23.

**15.   When and how should an individual request permission to make a modification?**

Under the Act, a resident or an applicant for housing makes a reasonable modification request whenever she makes clear to the housing provider that she is requesting permission to make a structural change to the premises because of her disability. She should explain that she has a disability, if not readily apparent or not known to the housing provider, the type of modification she is requesting, and the relationship between the requested modification and her disability.

An applicant or resident is not entitled to receive a reasonable modification unless she requests one. However, the Fair Housing Act does not require that a request be made in a particular manner or at a particular time. A person with a disability need not personally make the reasonable modification request; the request can be made by a family member or someone else who is acting on her behalf. An individual making a reasonable modification request does

not need to mention the Act or use the words "reasonable modification." However, the requester must make the request in a manner that a reasonable person would understand to be a request for permission to make a structural change because of a disability.

Although a reasonable modification request can be made orally or in writing, it is usually helpful for both the resident and the housing provider if the request is made in writing. This will help prevent misunderstandings regarding what is being requested, or whether the request was made. To facilitate the processing and consideration of the request, residents or prospective residents may wish to check with a housing provider in advance to determine if the provider has a preference regarding the manner in which the request is made. However, housing providers must give appropriate consideration to reasonable modification requests even if the requester makes the request orally or does not use the provider's preferred forms or procedures for making such requests.

**16.    Does a person with a disability have to have the housing provider's approval before making a reasonable modification to the dwelling?**

Yes. A person with a disability must have the housing provider's approval before making the modification. However, if the person with a disability meets the requirements under the Act for a reasonable modification and provides the relevant documents and assurances, the housing provider cannot deny the request.

**17.    What if the housing provider fails to act promptly on a reasonable modification request?**

A provider has an obligation to provide prompt responses to a reasonable modification request. An undue delay in responding to a reasonable modification request may be deemed a failure to permit a reasonable modification.

**18.    What if the housing provider proposes that the tenant move to a different unit in lieu of making a proposed modification?**

The housing provider cannot insist that a tenant move to a different unit in lieu of allowing the tenant to make a modification that complies with the requirements for reasonable modifications. See Questions 2, 21 and 23. Housing providers should be aware that persons with disabilities typically have the most accurate knowledge regarding the functional limitations posed by their disability.

**Example:** As a result of a mobility disability, a tenant requests that he be permitted, at his expense, to install a ramp so that he can access his apartment using his motorized wheelchair. The existing entrance to his dwelling is not wheelchair accessible because the route to the front door requires going up a step. The housing provider proposes that in lieu of installing the ramp, the tenant move to a different unit in the building. The tenant is not obligated to accept the alternative proposed by the housing provider, as his request to modify his unit is reasonable and must be approved.

10

**19.    What if the housing provider wants an alternative modification or alternative design for the proposed modification that does not cost more but that the housing provider considers more aesthetically pleasing?**

In general, the housing provider cannot insist on an alternative modification or an alternative design if the tenant complies with the requirements for reasonable modifications.  See Questions 2, 21 and 23.  If the modification is to the interior of the unit and must be restored to its original condition when the tenant moves out, then the housing provider cannot require that its design be used instead of the tenant's design.  However, if the modification is to a common area or an aspect of the interior of the unit that would not have to be restored because it would not be reasonable to do so, and if the housing provider's proposed design imposes no additional costs and still meets the tenant's needs, then the modification should be done in accordance with the housing provider's design.  See Question 24 for a discussion of the restoration requirements.

**Example 1:**  As a result of a mobility disability, a tenant requests that he be permitted, at his expense, to install a ramp so that he can access his apartment using his motorized wheelchair.  The existing entrance to his dwelling is not wheelchair accessible because the route to the front door requires going up a step.  The housing provider proposes an alternative design for a ramp but the alternative design costs more and does not meet the tenant's needs.  The tenant is not obligated to accept the alternative modification, as his request to modify his unit is reasonable and must be approved.

**Example 2:**  As a result of a mobility disability, a tenant requests permission to widen a doorway to allow passage with her wheelchair.  All of the doorways in the unit are trimmed with a decorative trim molding that does not cost any more than the standard trim molding.  Because in usual circumstances it would not be reasonable to require that the doorway be restored at the end of the tenancy, the tenant should use the decorative trim when he widens the doorway.

**20.    What if the housing provider wants a more costly design for the requested modification?**

If the housing provider wishes a modification to be made with more costly materials, in order to satisfy the landlord's aesthetic standards, the tenant must agree only if the housing provider pays those additional costs.  Further, as discussed in Questions 21 and 23 below, housing providers may require that the tenant obtain all necessary building permits and may require that the work be performed in a workmanlike manner.  If the housing provider requires more costly materials be used to satisfy her workmanship preferences beyond the requirements of the applicable local codes, the tenant must agree only if the housing provider pays for those additional costs as well.  In such a case, however, the housing provider's design must still meet the tenant's needs.

**21.    What types of documents and assurances may a housing provider require regarding the modification before granting the reasonable modification?**

A housing provider may require that a request for a reasonable modification include a description of the proposed modification both before changes are made to the dwelling and before granting the modification.  A description of the modification to be made may be provided to a housing provider either orally or in writing depending on the extent and nature of the proposed modification.  A housing provider may also require that the tenant obtain any building permits needed to make the modifications, and that the work be performed in a workmanlike manner.

The regulations implementing the Fair Housing Act state that housing providers generally cannot impose conditions on a proposed reasonable modification.  For example, a housing provider cannot require that the tenant obtain additional insurance or increase the security deposit as a condition that must be met before the modification will be allowed.  However, the Preamble to the Final Regulations also indicates that there are some conditions that can be placed on a tenant requesting a reasonable modification.  For example, in certain limited and narrow circumstances, a housing provider may require that the tenant deposit money into an interest bearing account to ensure that funds are available to restore the interior of a dwelling to its previous state, ordinary wear and tear excepted.  Imposing conditions not contemplated by the Fair Housing Act and its implementing regulations may be the same as an illegal refusal to permit the modification.

**22.    May a housing provider or homeowner's association condition approval of the requested modification on the requester obtaining special liability insurance?**

No.  Imposition of such a requirement would constitute a violation of the Fair Housing Act.

**Example:**  Because of a mobility disability, a tenant wants to install a ramp outside his unit.  The housing provider informs the tenant that the ramp may be installed, but only after the tenant obtains separate liability insurance for the ramp out of concern for the housing provider's potential liability.  The housing provider may not impose a requirement of liability insurance as a condition of approval of the ramp.

**23.    Once the housing provider has agreed to a reasonable modification, may she insist that a particular contractor be used to perform the work?**

No.  The housing provider cannot insist that a particular contractor do the work.  The housing provider may only require that whoever does the work is reasonably able to complete the work in a workmanlike manner and obtain all necessary building permits.

**24.    If a person with a disability has made reasonable modifications to the interior of the dwelling, must she restore *all* of them when she moves out?**

The tenant is obligated to restore those portions of the interior of the dwelling to their previous condition only where "it is reasonable to do so" and where the housing provider has requested the restoration.  The tenant is not responsible for expenses associated with reasonable

wear and tear. In general, if the modifications do not affect the housing provider's or subsequent tenant's use or enjoyment of the premises, the tenant cannot be required to restore the modifications to their prior state. A housing provider may choose to keep the modifications in place at the end of the tenancy. See also Question 28.

**Example 1:** Because the tenant uses a wheelchair, she obtained permission from her housing provider to remove the base cabinets and lower the kitchen sink to provide for greater accessibility. It is reasonable for the housing provider to ask the tenant to replace the cabinets and raise the sink back to its original height.

**Example 2:** Because of a mobility disability, a tenant obtained approval from the housing provider to install grab bars in the bathroom. As part of the installation, the contractor had to construct reinforcements on the underside of the wall. These reinforcements are not visible and do not detract from the use of the apartment. It is reasonable for the housing provider to require the tenant to remove the grab bars, but it is not reasonable for the housing provider to require the tenant to remove the reinforcements.

**Example 3:** Because of a mobility disability, a tenant obtained approval from the housing provider to widen doorways to allow him to maneuver in his wheelchair. In usual circumstances, it is not reasonable for the housing provider to require him to restore the doorways to their prior width.

**25. Of the reasonable modifications made to the interior of a dwelling that must be restored, must the person with a disability pay to make those restorations when she moves out?**

Yes. Reasonable restorations of the dwelling required as a result of modifications made to the interior of the dwelling must be paid for by the tenant unless the next occupant of the dwelling wants to retain the reasonable modifications and where it is reasonable to do so, the next occupant is willing to establish a new interest bearing escrow account. The subsequent tenant would have to restore the modifications to the prior condition at the end of his tenancy if it is reasonable to do so and if requested by the housing provider. See also Question 24.

**26. If a person with a disability has made a reasonable modification to the exterior of the dwelling, or a common area, must she restore it to its original condition when she moves out?**

No. The Fair Housing Act expressly provides that housing providers may only require restoration of modifications made to interiors of the dwelling at the end of the tenancy. Reasonable modifications such as ramps to the front door of the dwelling or modifications made to laundry rooms or building entrances are not required to be restored.

**27. May a housing provider increase or require a person with a disability to pay a security deposit if she requests a reasonable modification?**

No.  The housing provider may not require an increased security deposit as the result of a request for a reasonable modification, nor may a housing provider require a tenant to pay a security deposit when one is not customarily required.  However, a housing provider may be able to take other steps to ensure that money will be available to pay for restoration of the interior of the premises at the end of the tenancy.  See Questions 21 and 28.

**28.     May a housing provider take other steps to ensure that money will be available to pay for restoration of the interior of the premises at the end of the tenancy?**

Where it is necessary in order to ensure with reasonable certainty that funds will be available to pay for the restorations at the end of the tenancy, the housing provider may negotiate with the tenant as part of a restoration agreement a provision that requires the tenant to make payments into an interest-bearing escrow account.  A housing provider may not routinely require that tenants place money in escrow accounts when a modification is sought.  Both the amount and the terms of the escrow payment are subject to negotiation between the housing provider and the tenant.

Simply because an individual has a disability does not mean that she is less creditworthy than an individual without a disability.  The decision to require that money be placed in an escrow account should be based on the following factors:  1) the extent and nature of the proposed modifications; 2) the expected duration of the lease; 3) the credit and tenancy history of the individual tenant; and 4) other information that may bear on the risk to the housing provider that the premises will not be restored.

If the housing provider decides to require payment into an escrow account, the amount of money to be placed in the account cannot exceed the cost of restoring the modifications, and the period of time during which the tenant makes payment into the escrow account must be reasonable.  Although a housing provider may require that funds be placed in escrow, it does not automatically mean that the full amount of money needed to make the future restorations can be required to be paid at the time that the modifications are sought.  In addition, it is important to note that interest from the account accrues to the benefit of the tenant.  If an escrow account is established, and the housing provider later decides not to have the unit restored, then all funds in the account, including the interest, must be promptly returned to the tenant.

**Example 1:**  Because of a mobility disability, a tenant requests a reasonable modification. The modification includes installation of grab bars in the bathroom.  The tenant has an excellent credit history and has lived in the apartment for five years before becoming disabled.  Under these circumstances, it may not be reasonable to require payment into an escrow account.

**Example 2:**  Because of a mobility disability, a new tenant with a poor credit history wants to lower the kitchen cabinets to a more accessible height.  It may be reasonable for the housing provider to require payment into an interest bearing escrow account to ensure that funds are available for restoration.

**Example 3:**  A housing provider requires all tenants with disabilities to pay a set sum into an interest bearing escrow account before approving any request for a reasonable modification.  The amount required by the housing provider has no relationship to the actual cost of the restoration.  This type of requirement violates the Fair Housing Act.

**29.  What if a person with a disability moves into a rental unit and wants the carpet taken up because her wheelchair does not move easily across carpeting?  Is that a reasonable accommodation or modification?**

Depending on the circumstances, removal of carpeting may be either a reasonable accommodation or a reasonable modification.

**Example 1:**  If the housing provider has a practice of not permitting a tenant to change flooring in a unit and there is a smooth, finished floor underneath the carpeting, generally, allowing the tenant to remove the carpet would be a reasonable accommodation.

**Example 2:**  If there is no finished flooring underneath the carpeting, generally, removing the carpeting and installing a finished floor would be a reasonable modification that would have to be done at the tenant's expense.  If the finished floor installed by the tenant does not affect the housing provider's or subsequent tenant's use or enjoyment of the premises, the tenant would not have to restore the carpeting at the conclusion of the tenancy.  See Questions 24 and 25.

**Example 3:**  If the housing provider has a practice of replacing the carpeting before a new tenant moves in, and there is an existing smooth, finished floor underneath, then it would be a reasonable accommodation of his normal practice of installing new carpeting for the housing provider to just take up the old carpeting and wait until the tenant with a mobility disability moves out to put new carpeting down.

**30.  Who is responsible for paying for the costs of structural changes to a dwelling unit that has not yet been constructed if a purchaser with a disability needs different or additional features to make the unit meet her disability-related needs?**

If the dwelling unit is not subject to the design and construction requirements (i.e., a detached single family home or a multi-story townhouse without an elevator), then the purchaser is responsible for the additional costs associated with the structural changes. The purchaser is responsible for any additional cost that the structural changes might create over and above what the original design would have cost.

If the unit being purchased is subject to the design and construction requirements of the Fair Housing Act, then all costs associated with incorporating the features required by the Act are borne by the builder.  If a purchaser with a disability needs different or additional features added to a unit under construction or about to be constructed beyond those already required by the Act, and it would cost the builder more to provide the requested features, the structural changes would be considered a reasonable modification and the additional costs would have to

be borne by the purchaser.  The purchaser is responsible for any additional cost that the structural changes might create over and above what the original design would have cost.

> **Example 1:**  A buyer with a mobility disability is purchasing a single family dwelling under construction and asks for a bathroom sink with a floorless base cabinet with retractable doors that allows the buyer to position his wheelchair under the sink.  If the cabinet costs more than the standard vanity cabinet provided by the builder, the buyer is responsible for the additional cost, not the full cost of the requested cabinet.  If, however, the alternative cabinet requested by the buyer costs less than or the same as the one normally provided by the builder, and the installation costs are also the same or less, then the builder should install the requested cabinet without any additional cost to the buyer.

> **Example 2:**  A buyer with a mobility disability is purchasing a ground floor unit in a detached townhouse that is designed with a concrete step at the front door.  The buyer requests that the builder grade the entrance to eliminate the need for the step.  If the cost of providing the at-grade entrance is no greater than the cost of building the concrete step, then the builder would have to provide the at-grade entrance without additional charge to the purchaser.

> **Example 3**:  A buyer with a mobility disability is purchasing a unit that is subject to the design and construction requirements of the Fair Housing Act.  The buyer wishes to have grab bars installed in the unit as a reasonable modification to the bathroom.  The builder is responsible for installing and paying for the wall reinforcements for the grab bars because these reinforcements are required under the design and construction provisions of the Act.  The buyer is responsible for the costs of installing and paying for the grab bars.

**31.   Are the rules the same if a person with a disability lives in housing that receives federal financial assistance and the needed structural changes to the unit or common area are the result of the tenant having a disability?**

Housing that receives federal financial assistance is covered by both the Fair Housing Act and Section 504 of the Rehabilitation Act of 1973.  Under regulations implementing Section 504, structural changes needed by an applicant or resident with a disability in housing receiving federal financial assistance are considered reasonable accommodations.  They must be paid for by the housing provider unless providing them would be an undue financial and administrative burden or a fundamental alteration of the program or unless the housing provider can accommodate the individual's needs through other means.  Housing that receives federal financial assistance and that is provided by state or local entities may also be covered by Title II of the Americans with Disabilities Act.

> **Example 1**:  A tenant who uses a wheelchair and who lives in privately owned housing needs a roll-in shower in order to bathe independently.  Under the Fair Housing Act the tenant would be responsible for the costs of installing the roll-in shower as a reasonable modification to his unit.

**Example 2**: A tenant who uses a wheelchair and who lives in housing that receives federal financial assistance needs a roll-in shower in order to bathe independently. Under Section 504 of the Rehabilitation Act of 1973, the housing provider would be obligated to pay for and install the roll-in shower as a reasonable accommodation to the tenant unless doing so was an undue financial and administrative burden or unless the housing provider could meet the tenant's disability-related needs by transferring the tenant to another appropriate unit that contains a roll-in shower.

HUD has provided more detailed information about Section 504's requirements. See www.hud.gov/offices/fheo/disabilities/sect504.cfm.

**32.    If a person believes that she has been unlawfully denied a reasonable modification, what should that person do if she wants to challenge that denial under the Act?**

When a person with a disability believes that she has been subjected to a discriminatory housing practice, including a provider's wrongful denial of a request for a reasonable modification, she may file a complaint with HUD within one year after the alleged denial or may file a lawsuit in federal district court within two years of the alleged denial. If a complaint is filed, HUD will investigate the complaint at no cost to the person with a disability.

There are several ways that a person may file a complaint with HUD:

- By placing a toll-free call to 1-800-669-9777 or TTY 1-800-927-9275;

- By completing the "on-line" complaint form available on the HUD internet site: http://www.hud.gov; or

- By mailing a completed complaint form or letter to:

    Office of Fair Housing and Equal Opportunity
    Department of Housing & Urban Development
    451 Seventh Street, S.W., Room 5204
    Washington, DC 20410-2000

Upon request, HUD will provide printed materials in alternate formats (large print, audio tapes, or Braille) and provide complainants with assistance in reading and completing forms.

The Civil Rights Division of the Justice Department brings lawsuits in federal courts across the country to end discriminatory practices and to seek monetary and other relief for individuals whose rights under the Fair Housing Act have been violated. The Civil Rights Division initiates lawsuits when it has reason to believe that a person or entity is involved in a "pattern or practice" of discrimination or when there has been a denial of rights to a group of persons that raises an issue of general public importance. The Division also participates as *amicus curiae* in federal court cases that raise important legal questions involving the application

and/or interpretation of the Act.  To alert the Justice Department to matters involving a pattern or practice of discrimination, matters involving the denial of rights to groups of persons, or lawsuits raising issues that may be appropriate for *amicus* participation, contact:

>U.S. Department of Justice
>Civil Rights Division
>Housing and Civil Enforcement Section – G St.
>950 Pennsylvania Avenue, N.W.
>Washington, DC 20530

For more information on the types of housing discrimination cases handled by the Civil Rights Division, please refer to the Housing and Civil Enforcement Section's website at http://www.usdoj.gov/crt/housing/hcehome.html.

A HUD or Department of Justice decision not to proceed with a Fair Housing Act matter does not foreclose private plaintiffs from pursuing a private lawsuit.  However, litigation can be an expensive, time-consuming, and uncertain process for all parties.  HUD and the Department of Justice encourage parties to Fair Housing Act disputes to explore all reasonable alternatives to litigation, including alternative dispute resolution procedures, such as mediation.  HUD attempts to conciliate all Fair Housing Act complaints.  In addition, it is the Department of Justice's policy to offer prospective defendants the opportunity to engage in pre-suit settlement negotiations, except in the most unusual circumstances.