NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RABBI PHILIP LEFKOWITZ, LEVI LEFKOWITZ, and MOSHE LEFKOWITZ,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>WESTLAKE MASTER ASSOCIATION, INC.; BOBBIE RIVERE, DENNIS LAFER, RICHARD E. FONTANA, MARIE MILLER, JAMES P. GARRETT, DAVID J. WHELAN, MICHAEL W. YUDKIN, DIANE E. O'CONNOR, and PETER J. MARTINASCO, individually and as Members of the Board of Trustees of the Westlake Master Association, Inc.<br><br>　　　　　Defendants. | Civ. No. 18-14862<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion to Dismiss in Part filed by Defendants Westlake Master Association, Inc. (the "Association"); Bobbie Rivere; Dennis Lafer; Richard E. Fontana; Marie Miller; James P. Garrett; David J. Whelan; Michael W. Yudkin; Diane E. O'Connor; and Peter J. Martinasco (collectively, "Defendants"). (ECF No. 8.) Plaintiffs Rabbi Philip Lefkowitz, Levi Lefkowitz, and Moshe Lefkowitz (collectively, "Plaintiffs") oppose. (ECF No. 12.) The Court has decided the Motion on the written submissions of the parties, pursuant to Local Rule 78.1(b). For the reasons stated herein, the Motion is granted in part and denied in part.

1

## BACKGROUND

Plaintiffs live in the Westlake Golf and Country Club ("Westlake"), a planned real estate development for residents fifty-five years and older. (Compl. ¶¶ 5–8, ECF No. 1.) Defendant Association administers and maintains the common property and facilities at Westlake. (*Id.* ¶ 9.) All other Defendants (collectively, "Individual Defendants") are members of the Board of Trustees of the Association. (*Id.* ¶¶ 10–19.) Broadly speaking, Plaintiffs assert two instances of discrimination: (1) Defendants refused to allow Plaintiffs to construct a sukkah[1] as required by Plaintiffs' religion, and (2) Defendants refused to construct a path and provide a key to a gate to allow Plaintiffs easy egress from Westlake. Defendants' Motion attacks only the latter allegation (*see* Notice of Mot. at 2, ECF No. 8), so the following factual summary will discuss only that portion of the Complaint.

Plaintiffs are Orthodox Jews and amputees who use wheelchairs to transport themselves. (Compl. ¶¶ 28–30.) Because of their religious beliefs, they cannot use automobiles on the Sabbath or on Holy Days. (*Id.* ¶ 83.) Plaintiffs would like to visit close family relatives and attend prayer meetings on Gale Chambers Road. (*Id.*) However, both a grassy plot of land and a fence with a gate separates Westlake from Gale Chambers Road, making the most direct route inaccessible to Plaintiffs. (*Id.* ¶¶ 83, 98.) Plaintiffs therefore must travel the long way around the property, more than a mile "over dangerous and difficult roads that contain heavy, fast moving traffic and without sidewalks for long stretches" (*Id.* ¶ 84.) If a wheelchair-accessible path were constructed and the gate unlocked, Plaintiffs could reach their desired locations in 0.3 miles. (*Id.*

---

[1] "Sukkot is a festival of giving thanks for the fall harvest and commemorates the forty years of Jewish wandering in the desert after the giving of the Torah atop Mount Sinai. Orthodox Jews, who take the [scriptural] commandment to dwell in booths literally, are required to erect a sukkah. The sukkah is used during the seven-day festival for eating, entertaining and even for sleeping." (Compl. ¶ 38.)

¶ 89.) "Because of the danger, [Plaintiff] Rabbi Lefkowitz has ceased attending the prayer service." (*Id.* ¶ 87.)

Plaintiff Rabbi Lefkowitz asked the Board to provide a Sabbath-usable key to the gate[2] and to install a wheelchair-suitable path. (*Id.* ¶¶ 88, 96.) The Board refused, stating that the "gate in question was never intended to be a regular access point in this gated community," and "it [is] not in the best interests of the community as a whole, and the residents whose homes are adjacent to this access gate, to create a public pedestrian entrance to the community behind that area." (*Id.* ¶ 90.) Plaintiff Rabbi Lefkowitz repeated his request. (*Id.* ¶ 91.) Defendants responded:

> [T]he site plan for the community indicates . . . (a) [that] the gate is an access point for construction and other emergency vehicles, (b) that the area between the gate and [Plaintiffs' street] contains an easement for emergency vehicles, (c) that the location was not "intended" for "regular vehicular traffic or pedestrian traffic," and (d) that the Association "does not intend" to open the emergency access to general access for the community.

(*Id.* ¶ 92.) After further discussion between Plaintiffs and Defendants (*see generally id.* ¶¶ 93, 100–04), Defendants stated that Plaintiffs' use of the gate would "change the character of the community" (*id.* ¶ 105). At the time the Complaint was filed, Defendants continued to refuse Plaintiffs' requests. (*Id.* ¶ 106.)

The Complaint was filed on October 11, 2018, alleging that (a) Defendants violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f) (Compl. ¶¶ 107–12); (b) Defendants interfered with rights under the FHA, § 3617 (Compl. ¶¶ 113–17); (c) Defendants violated the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 *et seq.* (Compl. ¶¶ 118–124); (d)

---

[2] Other parts of the Complaint suggest that Plaintiffs seek to have the gate unlocked entirely. (*See* Compl. ¶ 88 ("open the already existing gate").) But Plaintiffs' general position appears to be that they request a key only for their access, not for that of other Westlake residents. (*See id.* ¶ 96. ("The Association simply needs to provide [Plaintiff] Rabbi Lefkowitz, and only [him], with a Sabbath-usable key . . . . This will prevent the gate from being a general access point.").)

3

Defendants violated the Planned Real Estate Development Full Disclosure Act ("PREDFDA"), N.J.S.A. § 45:22A-44(b) (Compl. ¶¶ 129–34); and (e) Individual Defendants aided and abetted violations of the FHA and NJLAD (*id.* ¶¶ 135–38).[3] Defendants filed a Motion to Dismiss in Part on December 13, 2018. (ECF No. 8.) Following a stipulated briefing schedule (ECF No. 11), Plaintiffs opposed the Motion on January 18, 2019 (ECF No. 12), and Defendants replied on February 1, 2019 (ECF No. 13). The Motion is presently before the Court.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.*; *see also Iqbal*, 556 U.S. at 679. Finally, the court must assume the veracity of all well-pleaded factual allegations and "determine whether the facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (quoting *Iqbal*, 556 U.S. at 679); *see also Malleus*, 641 F.3d at 563. If the complaint does not demonstrate more than a "mere possibility of misconduct," it must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

---

[3] The Complaint also alleges breach of Defendant Association's governing documents. (Compl. ¶¶ 125–28.) Defendants do not challenge that Count in the present Motion. (Notice of Mot. at 1.)

## **DISCUSSION**

**I.     The Complaint Fails to State an FHA Claim With Regard to Construction of a Path**

The FHA prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2). "Discrimination" includes both refusal to permit modifications and refusal to make reasonable accommodations:

> (A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted[, or]
>
> (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . .

§ 3604(f)(3).

The first of these provisions—refusal to permit modifications—addresses situations where a resident attempts to modify the premises and another individual refuses to let the resident do so. It requires a landlord or homeowners' association to *permit* such modifications by the resident, but it does not create an affirmative duty to make the modification on the resident's behalf. This reading is evident from the language of subsection (f)(2)(A)—"refusal to *permit*"—in contrast with subsection (f)(2)(B)'s "refusal to *make* reasonable accommodations." (emphasis added). Additionally, implementing regulations allow the landlord to "condition permission for a modification on the renter providing a reasonable description of the proposed modifications as well as reasonable assurances that the work will be done in a workmanlike manner and that any required building permits will be obtained," 24 C.F.R. § 100.203(b), language that clearly

contemplates the resident taking the initiative for making modifications. Finally, the examples provided in the regulations present only situations where a resident seeks permission from a landlord to make a modification themselves. § 100.203(c) ("A tenant with a handicap asks his or her landlord for permission to install grab bars in the bathroom at his or her own expense." "The applicant asks the landlord for permission to widen the doorway at the applicant's own expense.").

The Complaint in the present case does not allege that Defendants refused to permit Plaintiffs from constructing a wheelchair-accessible path. Rather, it alleges that Defendants refused to construct the path themselves. (*See* Compl. ¶ 96 ("[Defendant] Association simply needs to . . . construct a suitable path for [Plaintiffs] to traverse in their wheelchairs.").) Because § 3604(f)(3)(A) does not impose liability for a failure to construct a modification, but only for refusal to permit a resident to construct one, the Complaint fails to state a claim under this subsection.

The second provision prohibits "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." § 3604(f)(3)(B). Unlike the previous subsection, this subsection requires a landlord or homeowners' association to affirmatively provide accommodations, but only accommodations in "rules, policies, practices, or services." *Id.* Examples include creating an exception to a no-pets policy to allow a resident to have a service dog, 24 C.F.R. § 100.204(b)(1); *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 111 (3d Cir. 2017), reserving a parking space for a mobility-impaired resident when parking spaces are usually allocated on a first-come, first-served basis, § 100.204(b)(2), and granting a zoning variance, *Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096, 1105 (3d Cir. 1996). These

6

examples highlight that accommodations in "rules, policies, practices, or services" do not include serious physical changes to the premises. If the accommodation provision were to cover such physical changes, it would require landlords to make those changes at their own expense, contravening the intent of § 3604(f)(3)(A) that such changes be made and paid for by the tenant. For this reason, a homeowners' association cannot be required to construct a new path under § 3604(f)(3)(B), so the Complaint fails to state a claim on these grounds.

## II. The Complaint States an FHA Claim With Regard to Refusal to Provide Plaintiffs a Key

As previously discussed, the FHA requires a homeowners' association to "make reasonable accommodations in rules, policies, practices, or services." 42 U.S.C. § 3604(f)(3)(B). In this case, Plaintiffs have requested that Defendants provide them with a key so that they may use a gate that is usually locked and not available for residents' use. Unlike construction of a path, provision of a key would not require serious physical changes to the premises[4] and thus is best described as an accommodation in Defendant Association's "rules, policies, practices, or services." The Complaint therefore successfully states a claim based on Defendants' refusal to provide a key.

## III. The Complaint States a Claim for Interference with Rights Under the FHA

The FHA forbids "coerc[ing], intimidat[ing], threaten[ing], or interfer[ing] with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [42 U.S.C. § 3604 *et al.*]." § 3617. The term "interfere" is "broadly

---

[4] The Complaint does not specify whether the accommodation Plaintiffs seek would require physical changes to the gate itself, for example the removal of an electronic lock. The Court takes no position as to whether such changes would still constitute an accommodation under § 3604(f)(3)(B) or whether they would be reasonable under the statute.

7

applied to reach all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws." *Revock*, 853 F.3d at 113 (quoting *Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001)). A failure to review an accommodation request constitutes interference. *Id.* at 114. Because the Complaint alleges rejection of accommodation requests, a very similar action, it sufficiently alleges interference under § 3617.

### IV.   The Complaint States a Claim Under the NJLAD

The NJLAD deems it

> an unlawful discrimination . . . [f]or any person . . . [t]o discriminate against any person or group of persons because of . . . disability . . . in the terms, conditions or privileges of the sale, rental or lease of any real property or part or portion thereof or in the furnishing of facilities or services in connection therewith.

N.J.S.A. § 10:5-12(g)(2). The corresponding regulations closely mirror the modification and accommodation provisions of the FHA. *See* 42 U.S.C. § 3604(f)(3). NJLAD's modification provision prohibits "refus[al] to permit, at the expense of the person with a disability, reasonable modifications of existing premises occupied or to be occupied by the person with a disability." N.J.A.C. § 13:13-3.4(f)(1). However, NJLAD's accommodation provision goes beyond the FHA by prohibiting "refus[al] to make reasonable accommodations in rules, policies, practices or services, *or reasonable structural modifications*." § 13:13-3.4(f)(2) (emphasis added). Thus, the NJLAD and its regulations, unlike the FHA, contemplate structural modifications made and funded by a homeowners' association. As such, the Complaint states a claim both for Defendants' refusal to construct a path and their refusal to provide a key.

### V.   The Complaint States a Claim Under the PREDFDA

The PREDFDA states among other things that homeowners' associations "shall exercise [their] powers and discharge [their] functions in a manner that protects and furthers the health,

8

safety and general welfare of the residents of the community." N.J.S.A. § 45:22A-44(b). This portion of the statute has not been interpreted by New Jersey state courts at any level of depth. The New Jersey Supreme Court has provided exactly one sentence of interpretation, stating that, "restrictive covenants established by homeowners' associations that unreasonably limit speech and association rights could be challenged under subsection (b) of the statute." *Cmty. for a Better Twin Rivers v. Twin Rivers Homeowners' Ass'n*, 929 A.2d 1060, 1075 (N.J. 2007); *see also Dublirer v. 2000 Linwood Ave. Owners, Inc.*, 103 A.3d 249, 260 (N.J. 2014) (refusing to interpret the subsection); *Mazdabrook Commons Homeowners' Ass'n v. Khan*, 46 A.3d 507, 522 (N.J. 2012) (refusing to interpret the subsection). The Superior Court, Appellate Division has applied the business judgment rule to claims under § 45:22A-44(b). *Ruggiero v. Valleybrook Homeowners' Ass'n, Inc.*, 2008 WL 2219951, at *4 (N.J. Super. Ct. App. Div. May 30, 2008).

Even with this limited level of guidance by the state courts, Plaintiffs have sufficiently stated a claim under the PREDFDA. The Complaint, read in the light most favorable to Plaintiffs, shows that Defendant Association refused to provide a path and gate key that would have furthered the safety and general welfare of Plaintiffs and did so for reasons that were either pretextual or insufficient under the business judgment rule. This is sufficient.

## VI. The Complaint States a Claim Against Individual Defendants for Aiding and Abetting Under the NJLAD, but Not Under the FHA

N.J.S.A. § 10:5-12(e) forbids "any person . . . to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." Liability under this provision "require[s] active and purposeful conduct." *Tarr v. Ciasulli*, 853 A.2d 921, 928–29 (N.J. 2004).

> [A] plaintiff must show that "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of

9

> his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation."

*Id.* at 929 (quoting *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 129 (3d Cir. 1999)). However, a § 10:5-12(e) violation does not necessarily require a second party; one may aid and abet one's own acts, at least when acting on behalf of oneself as well as on behalf of an organization. *Ivan v. Cty. of Middlesex*, 612 F. Supp. 2d 546, 552 n.1 (D.N.J. 2009) (discussing *Hurley*, 174 F.3d at 126). In this case, the Complaint sufficiently alleges underlying NJLAD violations in the form of Defendants' refusal to construct a path and provide a key for Plaintiffs. The Complaint also asserts that Individual Defendants took "active and purposeful conduct" in furtherance of an NJLAD violation by rejecting Plaintiffs' several requests for accommodations and modifications. Thus, the Complaint also states a claim for aiding and abetting under the NJLAD.

The Complaint further alleges aiding and abetting under the FHA. But the FHA does not contain a stand-alone aiding and abetting provision, outside of the substantive prohibitions on discrimination, 42 U.S.C. § 3604, and the prohibition on coercion, intimidation, threats, and interference, § 3617. Therefore, any "aiding and abetting" claim under the FHA is also incorporated in other FHA claims brought in this case. Plaintiffs therefore cannot state a stand-alone claim for aiding and abetting under the FHA, but they do not lose the ability to claim FHA violations in other Counts.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss in Part is granted in part and denied in part. An appropriate order will follow.

Date:   2/19/19                                                         */s/ Anne E. Thompson*
                                                                         ANNE E. THOMPSON, U.S.D.J.