# BEVELOCK & FISHER LLC
*Attorneys at Law*

---

| | | |
|---|---|---|
| *Gregory J. Bevelock, Esq.*<br>*Tel: (973) 845-2999*<br>*gbevelock@bevelocklaw.com*<br><br>*Fax: (973) 845-2797* | **14 Main Street, Suite 200**<br>**Madison, NJ 07940**<br>*www.bevelocklaw.com* | *Charles M. Fisher, Esq.*<br>*Tel: (973) 845-2998*<br>*cfisher@bevelocklaw.com* |

---

December 12, 2019

**By ECF**
Hon. Zahid N. Quraishi, U.S.M.J.
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

        Re:    **Rabbi Philip Lefkowitz et al. Westlake Master Ass'n Inc. et al.**
                **Civil Action No. 18-14862 (AET)(ZNQ)**

Dear Judge Quraishi:

      This firm represents plaintiffs, Rabbi Philip Lefkowitz, Levi Lefkowitz, and Moshe Lefkowitz ("Plaintiffs"), in the above-referenced matter. We are writing pursuant to Local Civil Rule 37.1(a) to request the Court's assistance in compelling discovery in this matter.

      Counsel have met and conferred by letter and telephone call and agree that the two issues raised in this letter are ripe for the Court's intervention. The parties' respective letters addressing these issues are attached hereto as Exhibit 1 (11/14/2019 G. Bevelock Ltr. to W. Pinkstone) and Exhibit 2 (11/27/2019 W. Pinkstone Ltr. to G. Bevelock). The parties have resolved all other discovery issues raised in their correspondence.

      By way of brief background, as the Court knows, this matter involves claims by Plaintiffs that their homeowners' association, defendant Westlake Master Association, Inc. (the "Association" or "Westlake"), and the individual defendants, all of whom were members of the Association's Board of Trustees during relevant time periods (the "Individual Defendants"), discriminated against them based on their handicaps and religion, in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), and the New Jersey Law Against Discrimination, N.J.S.A.10:5-1 *et seq.* ("NJLAD").

      Plaintiffs are Orthodox Jews and are amputees, who have lost portions of their legs. Rabbi Lefkowitz repeatedly asked Defendants for permission (a) to construct a permanent screened porch that could also be used as a permanent sukkah because, among other things, the temporary sukkah permitted by Westlake's rules is far too small to accommodate Plaintiffs' wheelchairs; and (b) to open an existing access way and gate to the adjacent neighborhood where prayer meetings are held and where Rabbi Lefkowitz's daughter lives and install a path over

December 12, 2019
Page | 2

which Plaintiffs could travel in their wheelchairs. Defendants, however, have repeatedly denied these requests in violation of the FHA and NJLAD.

It is axiomatic that parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense" and that the discovery "need not be admissible in evidence to be discoverable." Fed.R.Civ.P. 26(b)(1). "Evidence is relevant if 'it has any tendency to make a fact more or less probable than it would be without the evidence' and 'the fact is of consequence in determining the action.'" *Microsoft Corp. v. Softicle.com*, Civ. Action No. 16-2762, 2017 WL 4387376 *3 (D.N.J. Oct. 2, 2017) (citation omitted). Moreover, "relevance is a broader inquiry at the discovery stage than at the trial stage." *Id.* (citation omitted). If the discovery sought is relevant, then the objecting party "must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is 'overly broad and burdensome' or 'oppressive' or 'vexatious' or 'not reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (quoting *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990). If the objecting parties fails to meet this burden, then the discovery should be compelled.

Here, there are two categories of documents and information that are highly relevant to Plaintiffs' claims that they were discriminated against based on their religion that Defendants have flatly refused to provide: (a) documents relating to Orthodox Jews; and (b) documents relating to the July 27, 2019 amendment to the Association's By-Laws that limits the activities that are permitted in homes in the Association (the "Residential Purposes Amendment"). For the reasons set forth below, the Court should Order Defendants to produce documents and answer the interrogatories related to these issues.

  A.  **Documents Relating to Orthodox Jews**

In their discovery requests, Plaintiffs requested the following categories of documents: (i) all documents relating to Orthodox Jews (WRFP No. 53; IRFP No. 34)[1]; (ii) all documents relating to Orthodox Jews moving to Westlake, Jackson, Lakewood or Ocean County (WRFP No. 54; IRFP No. 35); and (iii) all documents reflecting communications by Defendants and any other person relating to Orthodox Jews moving to Westlake, Jackson, Lakewood, or Ocean County (WRFP No. 55; IRFP No. 36).

Documents responsive to these requests are obviously relevant or reasonably calculated to lead to the discovery of relevant evidence. Whether Defendants discriminated against Plaintiffs because they are Orthodox Jews when they denied Plaintiffs' requests for a modified sukkah and denied Plaintiffs' requests to construct a path and use the existing gate to Gale

---

[1] "WRFP" refers to Westlake's responses to Plaintiffs' requests to produce documents, excerpts of which are attached hereto as Exhibit 3. "IRFP" refers to the Individual Defendants' responses to Plaintiffs' request to produce documents. Excerpts of defendant Bobbie Rivere's responses are attached hereto as Exhibit 4. Because all the Individual Defendants' responses are the same, we are only attached defendant Rivere's responses.

December 12, 2019
Page | 3

Chambers Road so that Plaintiffs could, among other things, attend a prayer meeting in the neighborhood on the side of the gate, is central to this case. Plaintiffs have asserted claims that Defendants denied these requests based on their religion. *See* Compl. Counts II, III, VIII, IX.[2] The requested documents are directly related to these issues and should be produced.

Defendants, however, refuse to provide any documents responsive to these requests, relying on a host of objections, all of which are meritless. Defendants object that these requests are excessive and harassing; overly broad, unduly burdensome and not proportional to the needs of the case; call for the production of irrelevant information and are not reasonably calculated to lead to the discovery of admissible evidence; and are vague and ambiguous. *See* Exhibit's 3 & 4. These generalized and unspecific objections do not provide the requisite specificity necessary to thwart production of these highly relevant documents. *See Microsoft*, 2017 WL 4387376 *3.

In their meet and confer letter, Defendants assert that the requests are overly broad because they would encompass (i) "any random news article delivered into a Board member's mailbox such as a daily email from a local news source;" and (ii) "any personal communication with friends or family of certain Board members that have no connection to this case." Exhibit 2. But documents such as these *are* relevant, or at the very least, are reasonably calculated to lead to the discovery of relevant evidence. For example, if in an email with a friend or family member, a Board member makes derogatory comments regarding Orthodox Jews generally, or about them moving into Westlake, Jackson, Lakewood or Ocean County, that document clearly would be relevant to the issue of whether the defendant was acting with discriminatory animus towards Plaintiffs when denying their accommodation requests. Likewise, if they receive news articles about Orthodox Jews and comment on them, those documents also would be relevant to the issue of discrimination.

Defendants state that they have produced documents that mention Orthodox Jews if – and only if – those documents also mentioned the Plaintiffs. But the documents Defendants produced underscore the necessity of them producing all the requested documents because those documents contain evidence of discrimination against Plaintiffs based on their religion and Plaintiffs are entitled to explore the full extent of the evidence relating to discriminatory animus against Plaintiffs.

By way of example only, Plaintiffs closed on their house in Westlake on June 27, 2016. After moving in, Rabbi Lefkowitz asked the Board if it would publish a letter of introduction from him to the community. On August 1, 2016, Frank Sisto – then a member of the Board of Trustees – wrote the following email:

> We shouldn't publish his letter and we shouldn't meet with him as a board and there should be no writeup in the journal….
>
> When was the last time the board meet {sic} with a new resident? ***We know what his agenda is, he said it in his email "Real estate trends indicate that other***

---

[2] "Compl." refers to Plaintiffs' Second Amended Complaint, ECF No. 37.

> ***Orthodox observant Jewish seniors will follow." He is looking to start a congregation of senior Orthodox Jews here in Westlake***….
>
> We should be polite but distant, know where he is coming from. ***He has an agenda, and it will change Westlake forever if it is allowed to be implemented***. He should not get any free publicity from us. [Exhibit 5 (Bates No. Westlake000270) (emphasis added)].

In addition, community members have emailed Board members, expressing discriminatory animus against Plaintiffs. One resident repeatedly emailed defendant Peter Martinasco. In September 2016, he emailed that "[t]he Board voted to open the back gate for 'Our Friend Rabbi Phil'. I'm out of here!", which was not true. *Id.* (Westlake000166). In November 2017, the resident wrote that "I hear Uncle Phil just got approval from the Wastelake {sic} Board to build a 'Sukkah' in his backyard during the Jewish Holidays. Ha. What a great neighbor. This is just the beginning." *Id.* (Westlake000167). In October 2017, the resident forwarded a link to an article stating the Rabbi Lefkowitz filed a complaint with the Ocean County Human Rights Commission and commented that "Wastelake {sic} is DOOMED! I seen it coming a year ago." *Id.* (Westlake000162). Of course, "a year ago" was when Plaintiffs became the first Orthodox Jewish family to move into Westlake.

Another example is from July 2018, after Plaintiffs retained their lawyer. A different resident wrote to defendant Dennis Lafer, now the President of the Board, and complained that the community was not being sufficiently informed about Plaintiffs' requests for accommodations (which the email incorrectly calls a lawsuit; there was no lawsuit at that time) and further stated: "I get how dangerous this could be but rumors re Orthodox takeover have resulted in MANY residents selling and moving elsewhere." *Id.* (Westlake000098). Defendant Lafer responded: "Call me we are totally in sync." *Id.*

These few examples conclusively establish that Plaintiffs' discovery requests are not a "fishing expedition." Defendants have produced some evidence of discrimination. Plaintiffs, however, are entitled to all of it.

Accordingly, Plaintiffs respectfully submit that the Court should order Defendants to produce all documents responsive to WRFP Nos. 53-55; IRFP Nos. 34-36.

  **B.**  **Documents & Information Relating to the Residential Purposes Amendment**

Plaintiffs also requested documents and information relating to Westlake's July 2017 adoption of the "Residential Purposes Amendment." Plaintiffs sought in effect all documents relating to Westlake's adoption of the Residential Purposes Amendment and the reasons therefor. *See* WRFP Nos. 56-59 (Exhibit 3); IRFP Nos. 37-39 (Exhibit 4). Plaintiffs also served an

interrogatory asking for the facts, circumstances, analyses and reasons underlying the Association's adoption of the Residential Purposes Amendment.  *See* WROG No. 7; IROG No. 5.[3]

The Residential Purposes Amendment provides that "No Home shall be used for any purpose other than as a private, single family residence.  It may only be used for residential purposes."  It defines "residential purposes" to mean "used solely as a place to live.  Holding or conducting regular meetings, presentations, assemblies, or other gatherings to which members of the public are invited, shall not constitute a residential purpose and are prohibited.  For purposes of this restriction 'members of the public' shall mean individuals other than personal friends and members of a resident's family."  Exhibit 8.

This amendment, if enforced, would have the effect of prohibiting Orthodox Jews – *i.e.*, Rabbi Lefkowitz and any other Orthodox Jew who moves to Westlake in the future – from conducting prayer meetings in their homes.  Orthodox Jews do not drive on the Sabbath and there are not synagogues in walking distance, so they conduct prayer meetings in their homes.  *See* Compl. ¶¶ 83, 87 (referencing prayer meeting in the neighborhood on the other side of the gate at issue in the case).  Orthodox Jews holding prayer meetings in Jackson and Lakewood have been harassed and subject to discrimination.  *See* Exhibit 1 (Bevelock 11/14/2019 Letter attaching a newspaper article and the Consent Order in *Rabbi David Slomovitz v. The Enclave at Fairways Homeowners Assoc., Inc.*, Civil No. 3:18-16190 , which provides that the HOA in that case "shall permanently cease and desist from taking any action against Orthodox Jewish homeowners for conducting prayer gatherings in their homes").

If, as Plaintiffs strongly suspect, the Residential Purposes Amendment was adopted to prevent Orthodox Jews from holding prayer meetings in their homes, and thus to disincentive Orthodox Jews from moving to Westklake, then that is directly relevant to the question of whether Defendants discriminated against Plaintiffs.  Both of Plaintiffs' requests for accommodations were directly related to their Orthodox Jewish faith – the construction of a sukkah and the use of the gate so that Plaintiffs could attend prayer meetings in the adjacent neighborhood (as well as visit their daughter and sister's family).  Both acts by Defendants – adopting the Residential Purposes Amendment and denying Plaintiffs' requests for accommodations – could be part of a campaign to deter Orthodox Jews from moving into Westlake and, in the words of Westlake Board member Frank Sisto, from "chang[ing] Westlake forever" (Exhibit 5, Westlake000270) and preventing an "Orthodox takeover" (*Id.*, Westlake000098).  Documents and information regarding Defendants' reasons for adopting the Residential Purposes Amendment are thus highly relevant.

Defendants refuse to provide any of these documents or information.  As with the requests regarding Orthodox Jews, Defendants assert various objections all of which are baseless, including that the requests are somehow excessive and harassing; overly broad, unduly burdensome and not

---

[3] "WROG" refers to Westlake's responses to Plaintiffs' interrogatories, excerpts of which are attached hereto as Exhibit 6.  "IROG" refers to the Individual Defendants' responses to Plaintiffs request to produce documents.  Excerpts of defendant Bobbie Rivere's responses are attached hereto as Exhibit 7.  Because all the Individual Defendants' responses are the same, we are only attached defendant Rivere's responses.

proportional to the needs of the case; calls for the production of irrelevant information and are not reasonably calculated to lead to the discovery of admissible evidence. Defendants also claim that the documents and information need not be provided because Plaintiffs "have not made any allegations or asserted any claims regarding or related to the Residential Purposes Amendment." *See* Exhibit's 3, 4 & 5. And in their letter, they assert that Plaintiffs are merely on a "fishing expedition." Exhibit 2.

None of these objections has any merit. As state above, boilerplate, non-specific objections are not valid bases for refusing to produce relevant information. See Microsoft, 2017 WL 4387376 *3. That Plaintiffs are not challenging the Residential Purposes Amendment in this lawsuit is irrelevant. If, as we believe and as demonstrated above, Defendants' reasons for adopting that amendment are relevant to Defendants' denial of Plaintiffs' requests for accommodation, then Plaintiffs are entitled to the discovery. Moreover, this is far from a fishing expedition given the evidence of discrimination that has already been produced in this case.

Accordingly, Plaintiffs respectfully submit that the Court should order Defendants to produce all documents responsive to WRFP Nos. 56-59; IRFP Nos. 37-39 and provide fully responsive answers to WROG No. 7; IROG No. 5.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter an Order compelling Defendants to produce all documents responsive to WRFP Nos. 53-59; IRFP Nos. 34-39 and provide fully responsive answers to WROG No. 7 and IROG No. 5.

Very truly yours,

BEVELOCK & FISHER LLC

*s/ Gregory J. Bevelock*
Gregory J. Bevelock

Attachments
c: Wayne E. Pinkstone, Esq. (by ECF)