# EXHIBIT 1

**BEVELOCK & FISHER LLC**
*Attorneys at Law*
_____

| | | |
|---|---|---|
| *Gregory J. Bevelock, Esq.*<br>*Tel: (973) 845-2999*<br>*gbevelock@bevelocklaw.com*<br><br>*Fax: (973) 845-2797* | **14 Main Street, Suite 200**<br>**Madison, NJ 07940**<br>*www.bevelocklaw.com* | *Charles M. Fisher, Esq.*<br>*Tel: (973) 845-2998*<br>*cfisher@bevelocklaw.com* |

_____

November 14, 2019

**By E-Mail**
Wayne E. Pinkstone, Esq.
Fox Rothschild LLP
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ, 08648-2311

      Re:    <u>**Rabbi Philip Lefkowitz et al. Westlake Master Ass'n Inc. et al.**</u>
              **Civil Action No. 18-14682 (AET)(ZNQ)**

Dear Wayne:

      I am writing with respect to deficiencies in Defendants' responses to Plaintiffs' First Set of Requests to the Production of Documents ("RFP") and First Set of Interrogatories ("Interrogatories").

      Given that the Defendants' responses were served three days ago, on November 11, 2019, this letter is not intended to be a full explication of all deficiencies Defendants' responses and Plaintiffs reserve the right to address any further deficiencies, if necessary, after a full review of Defendants' responses and document production.  There are, however, three categories of requests for documents and information that Defendants wrongfully refused to answer at all and these are the subject of this letter.

      **A.**    **Documents Relating to Orthodox Jews**

      In their RFPS, Plaintiffs requested the following category of documents:  (i) all documents relating to Orthodox Jews (RFP No. 53 to Westlake; RFP No. 34 to the Individual Defendants); (ii) all documents relating to Orthodox Jews moving to Westlake, Jackson, Lakewood or Ocean County (RFP No. 54 to Westlake; RFP No. 35 to the Individual Defendants); and (iii) all documents reflecting communications by the defendant and any other person relating to Orthodox Jews moving to Westlake, Jackson, Lakewood, or Ocean County (RFP No. 55 to Westlake; RFP No. 36 to the Individual Defendants).

      Defendants flatly refuse to provide any documents responsive to these requests, relying on a host of objections, all of which are meritless.  Defendants claim that these requests are

excessive and harassing; overly broad, unduly burdensome and not proportional to the needs of the case; call for the production of irrelevant information and are not reasonably calculated to lead to the discovery of admissible evidence; and are vague and ambiguous.

These objections are improper. Whether Defendants discriminated against Plaintiffs because they are Orthodox Jews, when, for example, they denied Plaintiffs' requests for modified sukkah and denied Plaintiffs' requests regarding the gate so that, among other things, Plaintiffs could attend a prayer meeting in the neighborhood on the side of the gate, is central to this case. The requested documents are directly related to these issues and should be produced. Moreover, contrary to Defendants' assertions, the requests are not harassing or excessive, nor overly broad or unduly burdensome.

Accordingly, please immediately supplement Defendants' document production with the requested documents.

### B. Documents & Information Relating to the Residential Purposes Amendment

Plaintiffs also requested documents and information relating to the Association's adoption in July 2017 of the "Residential Purposes Amendment," as that term is defined by Plaintiffs RFPs and Interrogatories. Specifically, the RFPs sought (i) all documents relating to the Residential Purposes Amendment (RFP No. 56 to Westlake; RFP No. 37 to the Individual Defendants); (ii) all documents reflecting the Association's reasons for adopting the Residential Purposes Amendment (RFP No. 58 to Westlake; RFP No. 37 to the Individual Defendants); and (iii) all documents relating to Defendants' reviews and/or evaluations of the Residential Purposes Amendment (RFP No. 57 to Westlake; RFP No. 39 to the Individual Defendants). Plaintiffs also served an interrogatory asking for the facts, circumstances, analyses and reasons underlying the Association's adoption of the Residential Purposes Amendment (Interrogatory No. 7 to Westlake; Interrogatory No. 5 to the Individual Defendants).

Defendants also flatly refuse to provide any documents or information responsive to these discovery requests. As with the Requests regarding Orthodox Jews, Defendants assert various objections all of which are baseless, including that the requests are somehow excessive and harassing; overly broad, unduly burdensome and not proportional to the needs of the case; calls for the production of irrelevant information and are not reasonably calculated to lead to the discovery of admissible evidence. Defendants also claim that the documents and information need not be provided because Plaintiffs "have not made any allegations or asserted any claims regarding or related to the Residential Purposes Amendment."

These objections are improper. Requests for information and documents relating to the Association's adoption of the Residential Purposes Amendment are reasonably calculated to the discovery of admissible evidence, including without limitation whether Defendants are discriminating against the Lefkowitzes because they are Orthodox Jews. The Residential Purposes Amendment provides that "No Home shall be used for any purpose other than as a private, single family residence. It may only be used for residential purposes." It defines "residential purposes" to mean "used solely as a place to live. Holding or conducting regular meetings, presentations, assemblies, or other

gatherings to which members of the public are invited, shall not constitute a residential purpose and are prohibited.  For purposes of this restriction 'members of the public' shall mean individuals other than personal friends and members of a resident's family."

If, as we suspect, the Residential Purposes Amendment was adopted with the intent to prevent Orthodox Jews – *i.e.*, Rabbi Lefkowitz and any other Orthodox Jew who moves to Westlake in the future – from conducting prayer meetings in their homes, then documents and information relating to that Amendment are relevant to Defendants' discrimination against the Lefkowitzes based on their Orthodox Jewish faith. Orthodox Jews holding prayer meetings in Jackson and Lakewood have been harassed and discriminated against, as evidenced by the attached newspaper article (Exhibit A) and the Consent Order in *Rabbi David Slomovitz v. The Enclave at Fairways Homeowners Assoc., Inc.*, Civil No. 3:18-16190 (FLW)(TJB) (see ¶2, providing that the HOA "shall permanently cease and desist from taking any action against Orthodox Jewish homeowners for conducting prayer gatherings in their homes") (Exhibit B).

Accordingly, please immediately supplement Defendants' document production and interrogatory responses with the requested documents and information.

  **C.** **Documents Relating to Requests for Accommodations/Modifications Based on Handicap or Religion.**

Plaintiffs asked Westlake to produce documents relating to requests for accommodations or modifications on the basis of handicap or religion by any resident of Westlake (RFP No. 9 to Westlake). Defendants refused to produce any documents in response to this Request claiming that it seeks documents that are not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants also claim that it is vague, ambiguous, unduly burdensome and not proportional to the needs of the case.

How Defendants evaluate claims for accommodations and modifications based on handicaps and religion, what standards they use, and whether Plaintiffs have been treated differently are plainly relevant to this case and whether Defendants have discriminated against Plaintiffs.

Accordingly, please immediately supplement Defendants' document production with the requested documents.

        Very truly yours,

        BEVELOCK & FISHER LLC

        _____
        Gregory J. Bevelock

Attachments
c:  Rabbi Philip Lefkowitz

# EXHIBIT A

**Case 3:18-cv-14862-AET-ZNQ   Document 39-1   Filed 12/12/19   Page 6 of 17 PageID: 482**

## Jackson held Sabbath 'stake out' of Orthodox Jews, lawsuit states

Mike Davis, @byMikeDavis　　Published 5:00 a.m. ET Jan. 24, 2018 | **Updated 3:44 p.m. ET Jan. 24, 2018**



*(Photo: David Gard)*

JACKSON - A religious gathering of Orthodox Jews was the subject of a "stake out" urged by a township council member, according to a lawsuit filed this month.

In the lawsuit, Pitney Lane resident Isaac Tawil alleges that Council Vice President Rob Nixon prompted township code enforcement officers to observe Sabbath prayer services at his home on Friday nights, an activity he described as harassment.

"The repeated presence of these officers had a chilling effect, was intimidating and became a form of harassment," Tawil's lawsuit states. "Mr. Tawil was being denied his right to pray at his home by the actions of the Jackson Township code enforcement."

**MORE: Jackson subject of federal, state investigations into discrimination (/story/news/crime/jersey-mayhem/2017/12/14/justice-department-jackson-discrimination-orthodox-jewish/951696001/)**

On the Sabbath, Orthodox Jewish law prohibits the operation of any machinery or turning on or off electricity – including driving a car, even if it is to and from religious services. Since many Orthodox Jews in Jackson do not live within walking distance of the synagogues in Lakewood, they hold prayer services at individual homes.

The services at his Pitney Lane home lasted about one hour on Friday nights, about two hours and 30 minutes on Saturday mornings and about 20 minutes on Saturday evenings, Tawil's lawsuit states.

Over the last two years, various complaints were filed with the township over such prayer services. To many longtime Jackson residents, the prayer services are another example of the township's changing culture as its Orthodox Jewish community grows.

In June 2016, Nixon – serving as council president at the time – emailed code compliance supervisor Ken Pieslak to observe Tawil's home, noting "14 cars in the driveway."

"I'd appreciate if we could keep on top of this to ensure everything going on is compliant with our code," Nixon said, according to township emails released by local watchdog site JacksonLeaks.com (https://jacksonleaks.com/2017/11/23/private-eyes/).

**RELATED: Jackson anti-Semitism investigation looks at residents' emails (/story/news/local/communitychange/2018/01/08/jackson-eruv-dormitory-ban-ordinance-investigation/997101001/)**

Reached by phone Tuesday evening, Nixon said he was not familiar with the lawsuit and declined to comment.

According to public records, the stakeouts were routinely criticized or outright discouraged. Pieslak repeatedly informed officials that there were no violations at Tawil's home or others targeted for observation: The large groups of people did not gather "on a regular basis" nor were there any noise complaints.

**3** free articles left. Only 99¢ per month.

L00342

And since it's a single-family home, there was no code violation for maximum occupancy, Pieslak said.





**Jackson Council President Rob Nixon** *(Photo: File photo)*

Township business administrator Helene Schlegel criticized the stakeouts in a September 2016 email: "We are wasting valuable time and money checking every complaint that comes in. We can't keep chasing ghosts. It's the same people and addresses every week," she said.

"I know that the possible shuls are a serious issue but the other issues are life-threatening."

Over the last two years, a series of issues brought to township council members have highlighted increased tensions between Jackson's growing Orthodox Jewish community and longtime residents who have pushed back against a changing culture — how local residents engage and interact with each other, and worship, too.

In 2017, the battles centered around the township's council decision to ban construction of schools and dormitories (/story/news/local/communitychange/2017/03/16/jackson-lakewood-orthodox-dormitories/99253236/) throughout most of the town.

And in September, a minor ordinance change stopped an Orthodox Jewish group from constructing an "eruv," (/story/news/local/communitychange/2017/09/13/eruv-orthodox-jewish-lakewood-jackson-mahwah/661573001/) a wire boundary affixed to utility poles, but reversed its decision (/story/news/local/communitychange/2017/12/12/jackson-eruv-orthodox-jews-anti-semitism-lawsuit-lakewood/943681001/)in December amid charges the change was spurred by religious discrimination.

*Mike Davis; @byMikeDavis: 732-643-4223; mdavis@gannettnj.com*

### Don't miss a thing

Download our apps & get alerts for local news, weather, traffic, more. Search "Asbury Park Press" in app store or use these links on your device: iPhone app (https://itunes.apple.com/us/app/asbury-park-press/id514649656?mt=8#) | Android app (https://play.google.com/store/apps/details?id=com.gannett.local.library.news.apps) | iPad app (https://itunes.apple.com/us/app/asbury-park-press-for-ipad/id600068887?mt=8#). Subscribe for full access. (http://offers.app.com/WNE)Follow us on Facebook (https://www.facebook.com/asburyparkpress)

Read or Share this story: http://on.app.com/2G7SZrc

**3** free articles left. Only 99¢ per month.

L00343

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RABBI DAVID SLOMOVITZ, NATHAN FRANKEL, EDWARD HANDLER, SAMUEL LANDY, MIRIAM LEVITZ, HARRY LIEBER, DAVID REICH, ABRAHAM TAUBER, and MORRIS WALDMAN,<br><br>Plaintiffs,<br><br>v.<br><br>THE ENCLAVE AT FAIRWAYS HOMEOWNERS ASSOCIATION, INC., a New Jersey Domestic Corporation,<br><br>Defendant. | Civil No. 3:18-cv-16910<br><br>**CONSENT ORDER** |

**THIS MATTER** having been brought before the Court on the Complaint of Plaintiffs, RABBI DAVID SLOMOVITZ, NATHAN FRANKEL, EDWARD HANDLER, SAMUEL LANDY, MIRIAM LEVITZ, HARRY LIEBER, DAVID REICH, ABRAHAM TAUBER, and MORRIS WALDMAN against the Defendant, THE ENCLAVE AT FAIRWAYS HOMEOWNERS ASSOCIATION, INC. pursuant to the provisions of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* ("FHA"), 42 U.S.C. § 1982, the New Jersey Constitution's protection of religious exercise, the New Jersey Law Against Discrimination ("LAD"), and the Planned Real Estate Development Full Disclosure Act, N.J. Stat. Ann. 45:22a-21, *et seq.* ("PREFDA"), to redress violations of their civil rights by the Defendant; and

**WHEREAS** Plaintiffs are all owners in fee simple of real property located in the Enclave at Fairways community in Lakewood, New Jersey; and

**WHEREAS** the Defendant is the homeowners' association organized pursuant to the laws

1

of the State of New Jersey for the Enclave at Fairways community located in Lakewood, New Jersey; and

**WHEREAS** on December 6, 2018, Plaintiffs filed a multi-count complaint against the Defendant in this Court alleging violations of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* ("FHA"), 42 U.S.C. § 1982, the New Jersey Constitution's protection of religious exercise, the New Jersey Law Against Discrimination ("LAD"), and the Planned Real Estate Development Full Disclosure Act, N.J. Stat. Ann. 45:22a-21, *et seq.* ("PREFDA") and a Motion for a Temporary Restraining Order seeking certain relief; and

**WHEREAS** on December 12, 2018, the parties appeared before the Court with respect to the Plaintiffs' Motion for a Temporary Restraining Order; and

**WHEREAS,** Defendant denies all liability for the claims asserted by Plaintiffs; and

**WHEREAS,** the Parties desire to resolve the Action without further litigation and to settle, fully and finally, any and all claims among them; and

**WHEREAS,** this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331, 1343(3), (4), and 42 U.S.C. § 3613(a), *et seq.* and over Plaintiffs' request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202; and

**WHEREAS,** this Court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367(a); and

**WHEREAS,** this Court has personal jurisdiction over Defendant; and

**WHEREAS,** venue is proper in this District;

**IT IS** on this 1st this day of February 2019, **ORDERED, ADJUDGED** and **DECREED** as follows:

2

1. The Defendant, THE ENCLAVE AT THE FAIRWAYS HOMEOWNERS ASSOCIATION, INC., shall permanently unlock and leave open the Damiano Way pedestrian gate as follows:

    a. On Fridays, from one (1) hour before sunset until 12:00 a.m. midnight.

    b. On Saturdays, from 4:00 a.m. until two (2) hours after sunset.

    c. Except as set forth in sub-section (d) immediately below, on Jewish Holy Days from one (1) hour before sunset until 12:00 a.m. midnight on the day prior to the first day of the holiday, from 4:00 a.m. until 12:00 a.m. midnight on the first day of the holiday, and from 4:00 a.m. until (2) hours after sunset on the final day of the holiday. If the day prior to the first day of the holiday is a Saturday, then regular Saturday hours as outlined in (b) shall control, and the rest of the holiday will adhere to the Holy Days schedule as outlined herein. If the second day of the holiday is a Saturday, then regular Saturday hours as outlined in (b) shall control, and the rest of the holiday will adhere to the Holy Days schedule as outlined herein. On Yom Kippur, which is a one-day holiday, the gate shall be unlocked from one (1) hour before sunset on the day prior to Yom Kippur until 12:00 a.m. midnight, and from 4:00 a.m. until two (2) hours after sunset on Yom Kippur. The Jewish Holy Days for 2019 will take place on the dates listed below. Plaintiffs or their designee will provide an updated list of dates for the Jewish Holy Days each year.

    d. The gate shall be unlocked until 2:00 am on the night preceding the "First Days" of Pesach, and on the following evening.

    e. During daylight savings time, when many of the Plaintiffs begin the Sabbath early, the gate shall be unlocked at the earlier of 6:00 p.m. or (1) hour before sunset.

Case 1:18-cv-14621-FLW-ZNQ Document 39-4 Filed 02/08/19 Page 11 of 17 PageID: 387

f. For clarification, the times for the access to the Damiano Way Pedestrian Gate are also set forth in Schedule A attached hereto.

| Yearly Jewish Holidays ||
|---|---|
| **Yearly Holidays** | **2019 Schedule** |
| Rosh Hashonoh | Monday, September 30th and Tuesday, October 1st |
| Yom Kippur | Wednesday, October 9th |
| Sukkos | Monday, October 14th and Tuesday, October 15th |
| Shmeini Atzeres | Monday, October 21st and Tuesday October 22nd |
| Pesach - First Days | Saturday, April 20th and Sunday, April 21st |
| Pesach - Second Days | Friday, April 26th and Saturday, April 27th |
| Shavous | Sunday, June 9th and Monday June 10th - three day door opening because of preceding Saturday, June 8th |

*All holidays are two days except Yom Kippur, which is one day.

2. The Defendant, THE ENCLAVE AT THE FAIRWAYS HOMEOWNERS ASSOCIATION, INC., shall permanently cease and desist from taking any action against Orthodox Jewish homeowners for conducting prayer gatherings in their homes that are incidental to the principal residential use of such homes, and shall permit such prayer gatherings to occur as follows:

4

   a. These prayer gatherings shall be limited to no more than 30 individuals, inclusive of family members.
   b. The effective date of the restriction on the number of individuals set forth in Section 2(a) of this Consent Order shall be three months following entry of this Consent Order by the Court.
   c. The hosts and attendees of any such gatherings agree to abide by the parking rules of the Enclave, and to bear responsibility for any violation of parking rules or ordinances. Defendant agrees to enforce any parking rules in a nondiscriminatory manner.

3. Defendant, THE ENCLAVE AT THE FAIRWAYS HOMEOWNERS ASSOCIATION, INC., shall have the following guest policy for residents:

   a. All members of the Association may provide to the Defendant a standing list of authorized visitors/guests for their residence which the HOA shall distribute to the guardhouse. Guests entering on Jewish Holy Days or the Sabbath will not be required to obtain or show a "pass" or other type of paperwork or electronic proof of identity when entering the Enclave.
   b. Said standing list shall be perpetual and shall not have an expiration date.
   c. Said standing list may be amended at the discretion of the member and upon notice to the Defendant. Such changes will be in effect as soon as practicable, and no later than on the next business day they are requested. Members may also notify the guard house of the names of temporary/same day guests or visitors not on the list who may enter the Association as provided in paragraph 3(e) below and/or by

      presenting themselves to the guard and providing the name and address of the resident they are visiting.

  d. Said standing list shall be limited to no more than forty (40) individuals per residence address.

  e. Individuals on said standing list or temporary/same day guests (who may or may not be on the list) may gain access to The Enclave at Fairways community during the Sabbath or Holy Days either by presenting themselves to the security booth at the Massachusetts Avenue gate to the community or by using the Damiano Way pedestrian gate, and do not need to be escorted thereafter while in the community, except that all guests must be escorted by a resident when using the following amenities: the clubhouse, swimming pools, tennis courts, bocce courts, horse shoe pits, or fishing the ponds.

4.  The Defendant, THE ENCLAVE AT THE FAIRWAYS HOMEOWNERS ASSOCIATION, INC., shall waive and/or rescind any and all fines, attorney fees, and/or citations levied upon and/or issued to Plaintiff Rabbi David Slomovitz associated with the use of his real property at 244 Enclave Boulevard, Lakewood, New Jersey through the date of entry of this Consent Order.

5.  The Defendant, THE ENCLAVE AT THE FAIRWAYS HOMEOWNERS ASSOCIATION, INC., shall restore the membership rights of Plaintiff Rabbi David Slomovitz in the Defendant upon entry of this Consent Order.

6.  In the event that any member shall make application to the Defendant, THE ENCLAVE AT THE FAIRWAYS HOMEOWNERS ASSOCIATION, INC. for a permit for the construction of a Sukkah on real property owned or leased by them in The Enclave at Fairways

community, the permit issued shall be printed on white paper with black lettering and shall state "Exterior Modification Permit."

7. The Parties agree that the content of this Consent Order and any Settlement Agreement and Mutual Release shall be made available in their entirety to all members of the Association. Notice provided to the Members of the Association regarding the settlement will be limited to an HOA announcement that states that "the Federal and State actions have been settled and the approved Consent Order and any Settlement Agreement are available for review."

9. The Department of Civil Rights complaint brought against the defendants is also concluded with the execution of this agreement.

8. This Court shall retain jurisdiction to resolve any disputes arising out of this action and Consent Order.

_____
FREDA L. WOLFSON, U.S.D.J.


We hereby consent to the form and entry of the within Order:

Attorneys for Plaintiffs

_____  Dated: 1/31/19
Christopher K. Costa, Esq.
Storzer & Associates, P.C.
1025 Connecticut Avenue, N.W.
Suite 1000
Washington, D.C. 20036
costa@storzerlaw.com


Attorneys for Defendant

7

_____  Dated: 1/31/19
Edward J. Turro, Esq.
Hueston McNulty, P.C.
256 Columbia Turnpike, Suite 207
Florham Park, New Jersey 07932
eturro@huestonmcnulty.com

# SCHEDULE A

## Sabbath and Holiday Pedestrian Damiano Door Opening and Closing Times

| *Sabbath* | **Pedestrian Door Open** | **Pedestrian Door Close** |
|---|---|---|
| Friday | One hour prior to sunset* | Midnight |
| Saturday | 4:00am | Two hours after sunset |

*Yom Kippur*

| | | |
|---|---|---|
| Day prior | One hour prior to sunset* | Midnight |
| Day of | 4:00am | Two hours after sunset |

*Two day holiday*

| | | |
|---|---|---|
| Day prior to onset | One hour prior to sunset* | Midnight |
| First day | 4:00am | Midnight |
| Second day | 4:00am | Two hours after sunset |

*Sabbath followed by two day Holiday*

| | | |
|---|---|---|
| Friday | One hour prior to sunset* | Midnight |
| Saturday | 4:00am | Midnight |
| Sunday (First day of holiday) | 4:00am | Midnight |
| Monday (second and last day of holiday) | 4:00am | Two hours after sunset |

*Two day holiday followed by Sabbath*

| | | |
|---|---|---|
| Wednesday | One hour prior to sunset* | Midnight |
| Thursday (First day of holiday) | 4:00am | Midnight |
| Friday (Second and last day of holiday) | 4:00am | Midnight |
| Saturday (Sabbath) | 4:00am | Two hours after sunset |

*First day of holiday on Sabbath*

| | | |
|---|---|---|
| Friday | One hour prior to sunset* | Midnight |
| Saturday (Sabbath and first day of holiday) | 4:00am | Midnight |
| Sunday (Second and last day of holiday) | 4:00am | Two hours after sunset |

*First day of holiday on Sabbath*

| | | |
|---|---|---|
| Pesach - First Days | 4:00am | 2:00a.m. |

* or 6:00pm during DST - Whichever is earlier

9